IN THE CIRCUIT COURT FOR THE
20TH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

CASE NO.:

Ruth C. Baltzer,

Plaintiff,

v.

Safety Specialty Insurance Company,

Defendant.

## COMPLAINT FOR BREACH OF CONTRACT

Plaintiff, Ruth C. Baltzer, (the "Insured"), hereby sues Defendant, Safety Specialty Insurance Company (the "Insurance Company"), and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. This is an action for damages that is more than $50,000.00 exclusive of interest, costs and attorney's fees.

2. The Insured is an individual who at all times material hereto has resided in LEE COUNTY, Florida.

3. The Insurance Company is qualified to do business in Florida and has, at all times material hereto, been conducting business in LEE COUNTY, Florida.

4. Venue is proper in LEE COUNTY, Florida because the contract, which forms the subject matter of this lawsuit, was executed in LEE COUNTY, Florida.

5. All conditions precedent to the filing of this lawsuit have occurred, have been

waived or have been performed.

## **GENERAL ALLEGATIONS**

6.    At all times material hereto, in consideration of a premium paid by the Insured, there was in full force and effect a certain homeowners insurance policy issued by the Insurance Company with a policy number of HS200948605 (the "Policy"). The Policy is attached hereto as Exhibit A and incorporated into the Complaint by reference herein. The Insured reserves the right to file a complete copy of the policy once secured through discovery.

7.    Accordingly, under the terms of the Policy, the Insurance Company agreed to provide insurance coverage to the Insured's property pursuant to the terms of the policy. The damaged property is located at 3562 Estero Boulevard, Fort Myers Beach, FL 33931 (the "Property").

8.    On or about 09/28/2022, while the Policy was in full force and effect, the Property sustained a covered loss as a result of Hurricane Ian (the "Loss").

9.    The Insurance Company assigned claim number FL-025-753 to the Loss.

10. Subsequently, the Insurance Company informed the Insured it believed the Loss was not covered under the Policy. See Exhibit B. After diligent inspection of the Loss, it was obvious that the Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy but which the Insurance Company failed to indemnify for.

11. As a result of the foregoing, the Insurance Company has breached the Policy.

12. The Insured has suffered and continues to suffer damages resulting from Insurance

2

Company's breach of the Policy.

13. The Insured has been obligated to retain the undersigned attorneys for the prosecution of this action and is entitled to a reasonable attorney's fee pursuant to Florida Statute Section 627.428.

## COUNT I
## BREACH OF CONTRACT

The Insured reincorporates paragraphs 1 through 13 as if fully set forth herein.

14. It is undisputed that the Insured and the Insurance Company entered into a written contract, the Policy, wherein the Insured agreed to pay a premium and the Insurance Company agreed to insure the Insured's Property.

15. The Insured has paid all premiums due and owing as contemplated by the Policy; thus, fully performing her obligations under the Policy.

16. The Insured's Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy.

17. Furthermore, at all times material hereto, the Insured has satisfied all post-loss obligations to the best of her ability in accordance with the Policy.

18. In contrast, the Insurance Company has failed to: (i) acknowledge coverage for a portion of the Loss; and/or (ii) pay Insured a sufficient amount for the loss. As a result of the foregoing, the Insurance Company has breached the Policy.

19. As a direct and proximate result of the Insurance Company's breach of the policy, the Insured has sustained damages.

3

WHEREFORE, the Insured respectfully requests that this Court, enter judgment against the Insurance Company for damages, plus pre-judgment interest, court costs and reasonable attorney's fees pursuant to Section 627.428, Florida Statutes.

## JURY TRIAL DEMAND

The Insured hereby demands a trial by jury on all issues so triable.

Dated May 17, 2023

Respectfully submitted,

Property & Casualty Law Group
Counsel for the Insured
2307 Douglas Road, Suite 302
Miami, Fl 33145
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**

_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

4



March 17, 2023


Property & Casualty Law Group
2307 Douglas Road, Suite 302
Miami, FL 33145
Attn: Carlos L. Santi, Esq.

RE:    Claim Number:        FL-025-753
       Insured:             Baltzer, Ruth C
       Policy Number:       HS200948605
       Date of Loss:        09/28/2022
       Loss Location:       3562 Estero Boulevard, Fort Myers Beach, FL 33931

Dear Mr. Santi,

I hereby certify that the attached is a true and accurate copy of the policy listed above as maintained by PURE Programs on behalf of Safety Specialty Insurance Company, in the usual and customary course of its business.

We trust that you will find this to be satisfactory and in accordance with your request, however, should you have any further questions or concerns, please don't hesitate to contact our office directly.

Kindest Regards,

Eric Harson
Director – Property Claims

Enclosures:

Certified Copy of Policy HS200948605

EXHIBIT A

**Named Insured & Mailing Address**

PPHV-DSC-FL-003 (04/2017)

Ruth C Baltzer
32 Tobey Brook
Pittsford, NY 14534

# POLICY FACE

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

**IF THE DECLARATIONS INDICATE THAT ENDORSEMENT PPHV-END-GEN-004 IS ATTACHED TO THIS POLICY, THIS POLICY CONTAINS A COINSURANCE PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

**IF THIS POLICY PROVIDES COVERAGE FOR THE PERIL OF WIND, THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

Surplus lines broker:

**PURE Programs, LLC**
**300 Colonial Center Pkwy**
**Suite 200**
**Roswell, GA 30076**
**License Number: L096875**

Retail broker:

Marsh USA Inc.
7201 West Lake Mead Blvd.
Suite 400
Las Vegas, NV 89128

John J. Willis
License Number: W327297

PPHV-DEC-FL-001 (02/2016)

# High Value Home Policy
## *Declarations*

Your Declarations summarizes your coverage and premium. Please read your policy, any attached forms and endorsements and your Declarations for a full description of your coverage.

**Surplus Lines Broker:**


pure programs®
A member of the Tokio Marine Group

**Retail broker:**
Marsh USA Inc.
7201 West Lake Mead Blvd.
Suite 400
Las Vegas, NV, 89128

**PURE Programs, LLC**
300 Colonial Center Pkwy
Suite 200
Roswell, GA 30076
License Number: L096875
(888) 813-PURE

**Named Insured & Mailing Address**
Ruth C Baltzer
32 Tobey Brook
Pittsford, NY, 14534

| | |
|---|---|
| **Policy Number:** | HS200948605 |
| **Policy Period:** | 11/01/2021 To 11/01/2022          at 12:01 Standard Time |
| **Insurance Company:** | **Safety Specialty Insurance Company** |

### THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

| COVERAGE | COVERAGE LIMIT |
|---|---|
| Personal Liability | $500,000 |
| Medical Payments to Others | $10,000 |

PPHV-DEC-FL-001 (02/2016)

| **INSURED LOCATION** | **INSURED LOCATION TYPE** |
|---|---|
| 3562 Estero Blvd | Home Dwelling |
| Fort Myers Beach, FL 33931 | |

| **COVERAGE** | **COVERAGE LIMIT** |
|---|---|
| Dwelling | $587,121 |
| Other Structures | $350,017 |
| Contents | $293,560 |
| Loss of Use | $117,425 |
| Rebuilding to Code | $146,780 |
| **LOCATION PREMIUM** | **$35,549** |

| **DEDUCTIBLE** | |
|---|---|
| Hurricane | **$29,356 (5% of Dwelling Coverage Limit) IN THE AGGREGATE FOR A CALENDAR YEAR** |
| All Other Peril | $2,500 per covered loss |

## FORMS AND ENDORSEMENTS
The following forms and endorsements are attached to this Policy.

| Title | Form Number | Edition Date |
|---|---|---|
| Letter of Non-Renewal With Coverage | | 10/01/2020 |
| Confirmation of Policy Expiration Notice | PPHV-CNR-GEN-003 | 05/01/2017 |
| Policy Face | PPHV-DSC-FL-003 | 04/01/2017 |
| Offer of Coverage | PPHV-OTH-GEN-002 | 10/01/2020 |
| Declarations Page | PPHV-DEC-FL-001 | 02/01/2016 |
| Contact Information Notice | PPHV-DSC-GEN-004 | 04/01/2017 |
| Service of Process - Florida | PPHV-END-FL-021 | 04/01/2017 |
| Notice of Nonrenewal | PPHV-CNR-GEN-006 | 10/01/2020 |
| Privacy Notice | PPHV-DSC-GEN-002 | 02/01/2016 |
| Notice Under FCRA | PPHV-DSC-GEN-003 | 02/01/2016 |
| Special Notice | PPHV-DSC-FL-002 | 10/01/2018 |
| High Value Home Policy | PPHC-PCF-FL-001 | 02/01/2016 |
| Witness Clause | PPHV-OTH-GEN-003 | 11/01/2020 |
| Amended Special Limits of Liability for Contents | PPHV-END-GEN-002 | 02/01/2016 |
| Dwelling Replacement Cost Coverage | PPHV-END-FL-007 | 02/01/2016 |
| Elimination of Waiver of Deductible | PPHV-END-GEN-003 | 02/01/2016 |
| Increased Limit for Ensuing or Bacteria Coverage | PPHV-END-FL-011 | 02/01/2016 |
| Loss of Use - Fair Rental Value | PPHV-END-GEN-006 | 02/01/2016 |
| Premises Liability Limitation | PPHV-END-GEN-017 | 02/01/2016 |
| Sinkhole Loss Coverage | PPHV-END-FL-001 | 02/01/2016 |
| Tenant Animal Liability Exclusion | PPHV-END-GEN-028 | 02/01/2016 |
| Communicable Disease Exclusion | PPHV-END-GEN-069 | 05/01/2020 |

| | | |
|---|---|---|
| Total Premium | $35,549.00 | |
| Inspection Fee | $0.00 | YOU WILL BE |
| State Taxes | $1,756.12 | BILLED |
| Stamping Fee | $21.33 | SEPARATELY |
| Emergency Management Preparedness and Assistance Trust Fund: | $2.00 | FOR |

PPHV-DEC-FL-001 (02/2016)

**Grand Total**                                    $37,328.45            ANY PREMIUM DUE.

---

**THIS DECLARATIONS PAGE WITH POLICY PROVISIONS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THE ABOVE NUMBERED POLICY.**

**Date Issued:**

11/02/2021

AUTHORIZED REPRESENTATIVE:

John J. Willis
License Number: W327297

# Contact Information Notice

*Important information about your policy. Please read it carefully.*

---

**FOR INFORMATION OR TO
MAKE A COMPLAINT,
PLEASE CALL:
(888) 813-PURE**

**OR WRITE TO:
PURE Programs, LLC
300 Colonial Center Pkwy
Suite 200
Roswell, GA 30076**

PPHV-END-FL-021 (04/2017)

# Service of Process - Florida

*This endorsement changes the policy. Please read it carefully.*

The Commissioner of Insurance of the State of Florida is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

> Donna Moch
> c/o CT Corporation System,
> 1200 South Pine Island Road
> Plantation, FL 33324

as its agent in Florida to whom such process shall be forwarded by the Commissioner of Insurance.

This endorsement is issued as part of Policy HS200948605. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Policy Expiration Date, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

PPHV-DSC-GEN-002 (02/2016)

# Privacy Notice

*Important notice regarding your policy.*

## What Does PURE PROGRAMS, LLC Do with Your Personal Information?

*Why does PURE Programs, LLC collect personal information?*

Financial companies choose how they use and share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

*What kinds of personal information does PURE Programs, LLC collect?*

The types of personal information we collect and share depend on the product or service you have with us. This information can include:
- Social Security Numbers, email address, dates of birth, physical addresses;
- Vehicle information, motor vehicle and claims histories;
- Vehicle operators information, mortgages, lien or lease holder information;
- Credit card information and credit reporting information such as scores; and
- Occupation and whether you own or rent your residence.

When you are *no longer* our customer, we continue to share your information as described in this notice.

At any time you can access any of your personal information that we may have. To do so, please submit a written request to us describing the information you want to review, and properly identify yourself and specifically grant us permission so that we can release requested information if it is able to be disclosed.

*How does PURE Programs, LLC collect my information?*

PURE Programs, LLC collects only the information necessary to underwrite insurance policies, adjust claims and operate the other functions necessary to provide you with the products and services we offer. PURE Programs, LLC collects this information from various reporting or database and agencies or bureaus. We collect your personal information, for example, when you:
- Apply for insurance, file a claim, contact us for information or with questions;
- Send us emails or other correspondence; or
- If you communicate with us by telephone (please note that we may record or monitor the call).

*How does PURE Programs, LLC protect my information?*

To protect your personal information from unauthorized access and use, we use security measures that comply with state and federal law. These measures include computer safeguards and secured files and buildings. We

restrict access to nonpublic personal information to those employees who need to know that information to provide products or services to you. We take reasonable measures to ensure that the companies we choose as our business partners support our commitment to protecting the privacy of our subscribers in their handling of our subscribers' personal data.

*How does PURE Programs, LLC use my personal information?*

All financial companies need to share customer's personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons PURE Program chooses to share subscribers' personal information; and whether you can limit this sharing.

Any information which we have or may obtain about you or other individuals listed as policyholders on your policy will be treated confidentially.

| Reasons we can share your personal information | Does PURE Programs, LLC share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes—** such as policy issuance, claim adjustment, responding to service requests from you or your broker, responding to court orders and legal investigations, government agencies for regulatory reporting, etc. | Yes | No |
| **For our marketing purposes—** to offer our products and services to you. | Yes | No |
| **For joint marketing with other financial companies.** | No | N/A |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences. | Yes | No |
| **For our affiliates' everyday business purposes—** information about your creditworthiness. | No | N/A |
| **For nonaffiliates to market to you.** | No | N/A |

<u>PURE Programs, LLC Affiliates:</u> Privilege Underwriters, Inc. (PUI), PURE Insurance Company (PIC), PURE Risk Management, LLC (PRM)

<u>Non-affiliates</u>: Companies not related by common ownership or control. They can include claims and other servicing vendors, insurance agencies, government agencies and departments, insurance servicing and reporting entities.

*Why I can't I limit all sharing?*

Federal law gives you the right to limit only:
- Sharing for affiliates' everyday business purposes - information about our creditworthiness; and

●   Sharing for non-affiliates to market to you,

neither of which PURE Programs, LLC does. The only sharing PURE Programs, LLC does is to allow PURE Programs, LLC to run its everyday business.

*Can I change the personal information PURE Programs, LLC has?*

If you ask us to amend or delete information about you, we will correct, amend or delete the personal information in dispute or notify you of the action we will take along with the reason for our decision. You can submit your request for additional information or your request to amend your information to:

> Privacy Officer
> PURE Programs, LLC
> 44 South Broadway, Suite 301
> White Plains NY 10601

(If the information you ask us to modify is from another source such as a Credit Reporting entity, we will not be able to change their information and you will need to work directly with that provider).

*How do you use Credit or Consumer Reports?*

In accordance with applicable federal and state laws, a credit report or other consumer report about you may be used to develop an insurance score. Your insurance score will be used to review your application for insurance and subsequent amendments and renewals. An insurance score uses information from your credit and/or consumer report to help predict how often you are likely to file claims and how expensive those claims will be. Insurance score information is then used to determine how much we will charge for insurance.

Items from a credit report that could affect an insurance score include payment history, number of revolving accounts, number of new accounts, and the presence of collection accounts, bankruptcies and foreclosures. We will use information provided by LexisNexis (formerly ChoicePoint), or an equivalent third party vendor, in connection with the development of your insurance score. You have the right to a free copy of the credit report or consumer report used to develop your insurance score, and you have the right to work with the credit reporting agency that provided it to correct information which may be inaccurate.

*What is an extraordinary life circumstance and how might it apply to me?*

If an insurance score was used to rate your policy, you have the right to request in writing that we consider extraordinary life circumstance in connection with the use of your insurance score. PURE Programs, LLC is an insurer authorized to do business in certain states that allow insurance score to be used to rate risks for a policy of personal insurance. In those states where permitted, PURE Programs, LLC may, on written request from a consumer, provide exceptions to its rules for a consumer who has experienced, and whose credit information has been directly influenced by, events considered extraordinary circumstances such as; 1. Catastrophic illness or injury; 2. Death of a spouse, child or parent; 3. Divorce; 4. Identity theft; 5. Temporary loss of employment; 6. Military deployment overseas; 7. Total or other loss that makes your home uninhabitable; 8. Other events determined by PURE Programs, LLC.

PPHV-DSC-GEN-002 (02/2016)

In the case that we receive an extraordinary life event submission, we may, but are not required to, do any of the following: 1. Require you to provide reasonable written and independently verifiable documentation of the event. 2. Require you to demonstrate that the event had direct and meaningful impact on your credit information. 3. Require that such request be made no more than sixty days after the date of the application for insurance or the policy renewal. 4. Grant an exception despite the fact that you did not provide the initial request for an exception in writing. 5. Grant an exception where you ask for consideration of repeated events or we have considered this event previously. 6. Assign a neutral insurance score.

PPHV-DSC-GEN-003 (02/2016)

# NOTICE UNDER THE FAIR
# CREDIT REPORTING ACT (FCRA)

11/02/2021

The purpose of this notice is to share some important information with you regarding your Policy.

We understand that as a good insurance risk you want to be rewarded with lower premiums. We use many factors in determining the price of your insurance, making the rate you pay commensurate with your individual situation.

One of the factors we consider in determining your premium is an insurance score, which is obtained from a consumer report. Due in part to your insurance score your policy did not receive the highest possible discount or your policy premium increased. The primary factors in the consumer report that contributed to your insurance score are:
% OF ACCOUNTS REPORTED IN LAST 24 MONTHS TO TOTAL ACCOUNTS ON FILE
# OF BANK REVOLVING ACCTS PAID AS AGREED IN THE LAST 24 MONTHS

The consumer report we used to determine your insurance score was provided by a consumer reporting agency. You have the right to obtain a free copy of your consumer report within 60 days of receiving this notice. You also have the right to dispute incomplete or inaccurate information with them.

The consumer reporting agency name and contact information is:

LexisNexis® Consumer Service Center
P. O. Box 105108
Atlanta, Georgia 30348-5108
(800) 456-6004
www.consumerdisclosure.com
Reference Number: 20258181116550

Please note that this consumer reporting agency did not make any decision regarding your policy premium and is therefore unable to answer questions regarding your policy or premium determination.

If, after any reinvestigation of any information disputed by you, an item of the report is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency must promptly:

- Delete that item of information from your report, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

- Notify the furnisher of that information and you that the information has been modified or deleted from your report

PPHV-DSC-GEN-003 (02/2016)

We will then re-underwrite or re-rate your policy and shall make any adjustments necessary consistent with our underwriting and rating guidelines within thirty (30) days of receiving notice from you.

In addition, please also let us know if you feel your consumer report has been adversely influenced by extraordinary life events, including but not limited to catastrophic illness, injury, loss of employment, divorce, death of spouse, child or parent or identity theft. We will review the circumstances as reported by you or your agent and will request and review your consumer report.

If it is determined the extraordinary life event did directly influence your consumer report, your policy will be re-rated without using the insurance score that was based on your consumer report.

If you would like to learn more about how we use insurance score to provide you the best possible price, please contact **PURE Member Services** at **1-888-813-7873**.

PPHV-DSC-FL-002 (10/2018)

# SPECIAL NOTICE - FLORIDA

**LAW AND ORDINANCE: LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. PLEASE DISCUSS WITH YOUR INSURANCE AGENT.**

**FLOOD INSURANCE: YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE. YOUR HOMEOWNER'S INSURANCE POLICY DOES NOT INCLUDE COVERAGE FOR DAMAGE RESULTING FROM FLOOD EVEN IF HURRICANE WINDS AND RAIN CAUSED THE FLOOD TO OCCUR. WITHOUT SEPARATE FLOOD INSURANCE COVERAGE, YOU MAY HAVE UNCOVERED LOSSES CAUSED BY FLOOD. PLEASE DISCUSS THE NEED TO PURCHASE SEPARATE FLOOD INSURANCE COVERAGE WITH YOUR INSURANCE AGENT.**

PPHV-DSC-FL-002 (10/2018)          Includes copyrighted material of ISO, Inc., with its permission.          Page 1 of 1

eFiled Lee County Clerk of Courts Page 18

# High Value Home Policy

## Your High Value Home Policy - Quick Reference

**Policy Section**                                          **Beginning on Page**

**Section I – DEFINITIONS**                                         2

**Section II – PROPERTY COVERAGE**                                  6

    A.     Perils Insured Against
    B.     Coverage and Loss Settlement
    C.     Additional Coverages
    D.     Exclusions

**Section III – LIABILITY COVERAGE**                                17

    A.     Personal Liability
    B.     Medical Payments to Others
    C.     Additional Coverages
    D.     Exclusions

**Section IV – GENERAL PROVISIONS**                                 21

### Insuring Agreement

The Insurance company shown on the Declarations will provide the insurance described in this policy in return for payment of the premium and compliance with all applicable provisions of the policy.

---

## Section I - DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and if the "named insured" is an individual, the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

In addition, certain words and phrases are defined below. When used throughout the policy, the defined words will be bolded.

**Actual Cash Value**
**Actual cash value** means the amount it would cost to repair or replace covered property with material of like kind and quality, subject to a deduction for depreciation, deterioration and obsolescence.

**Aircraft**
**Aircraft** means any device used or designed for flight. **Aircraft** does not include model or hobby craft not used or designed to carry people or cargo.

**Bodily Injury**
**Bodily Injury** means physical bodily harm, sickness or disease. This includes required care, loss of services and resulting death.

**Business**
**Business** means a trade, occupation or profession engaged in on a full-time, part-time or occasional basis. **Business** also means any activity engaged in for money or other compensation. This does not include **incidental business**.

**Catastrophic Ground Cover Collapse**
**Catastrophic ground cover collapse** means geological activity that results in all of the following:

a. The abrupt collapse of the ground cover;
b. A depression in the ground cover clearly visible to the naked eye;
c. **Structural damage** of the **principal building** insured under this policy, including the foundation; and
d. The **principal building** being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that **principal building**.

**Catastrophic ground cover collapse** coverage does not apply to **other structures**.

**Collectibles**
**Collectibles** means collections of rare, unique or novel items of personal interest. Examples of **collectibles** include but are not limited to memorabilia, model trains, books and dolls.

**Contents**
**Contents** means personal property you or a **family member** own or possess. For any **residence premises** listed on your Declarations that is a condominium or cooperative, **contents** means;

a. Personal property you or a **family member** own or possess;
b. Improvements, betterments, appliances, installations or fixtures that you paid for or acquired along with the **residence premises**;
c. All property which is your insurance responsibility under a corporation or association of property owner's agreement;
d. Items of real property which pertains exclusively to the **residence premises**; and
e. structures owned solely by you other than the **residence premises** located at the **residence premises**.

**Damages**
**Damages** means the sum required to satisfy a claim for an **occurrence** covered by this policy, whether settled and agreed to in writing by us or resolved by judicial review. **Damages** include prejudgment interest awarded against an **insured**

**Deductible**
**Deductible** means the amount you are responsible to pay for any covered loss we pay.

**Dwelling**
**Dwelling** means the owned one or two family house at each location named on your Declarations. **Dwelling** is not a condominium or a cooperative.

**Family member**
**Family member** means a person that resides in an **insured location** and is related to you by blood, marriage, or adoption.

**Family member** also includes
a. Other persons under the age of 25 who resides in an **insured location** and are in your care or the care of another **family member**; and

High Value Home Policy
PPHV- PCF-FL-001 (02/2016)

b.  A student enrolled in school full-time, as defined by the school, who was a resident in an **insured location** before moving out to attend school, provided the student is under the age of 25 and is:
1) Related to you by blood, marriage, or adoption; or
2) In your care or the care of another **family member**.

## Fine Arts
**Fine Arts** means paintings, etchings, statuary, antiques and any other bona fide works of art, historical value or artistic merit.

## Flood
**Flood** means:
a.  A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties from:
1. Overflow of inland or tidal waters;
2. Unusual and rapid accumulation or runoff of surface waters from any source;
3. **Mudflow**; or

b.  Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a **flood** as defined in a. above.

All flooding in a continuous or protracted event will constitute a single **flood**.

## Fungi
**Fungi** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products, produced or released by **fungi**.

## Hurricane
**Hurricane** means:
1. A storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service; and

2. Wind, wind gusts, hail, rain, tornadoes or cyclones caused by or resulting from a hurricane.

The duration of a hurricane includes the time period:

a.  Beginning at the time a hurricane watch or hurricane warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;
b.  Continuing for the time period during which the hurricane conditions exist anywhere in Florida; and
c.  Ending 72 hours following the termination of the last hurricane watch or warning issued by the National Hurricane Center of the National Weather Service for anywhere in the state of Florida.

## Incidental Business
The definition of **Incidental Business** depends upon where the **incidental business** is conducted.
a.  Away from your **residence premises**.
**Incidental Business** means a self−employed business activity normally undertaken by persons under the age of 18 including but not limited to newspaper delivery, babysitting, caddying, and lawn care. Any of these activities must:

1. Not yield gross revenues in excess of $10,000 in any year;
2. Have no employees subject to any workers' compensation, disability benefits, unemployment compensation or other similar laws; and
3. Conform to local, state, and federal laws; or

b.  At your **residence premises**.
**Incidental Business** means the following business activities, conducted in whole or in part on your **residence premises**:

1. Managing one's own personal investments, regardless of where the revenues are produced;
2. Renting to others for use as a private residence or farm, the **residence premises**; or
3. Any other business activity that:
i)  Does not yield gross revenues in excess of $10,000 in any year;
ii) Has no employees subject to any workers' compensation, disability

benefits, unemployment compensation or other similar laws;

iii) Conforms to local, state, and federal laws; and

iv.) Does not involve employment of others for more than 1,250 hours of farm work during the Policy Period.

## Insured

**Insured** means you or a **family member**.

With respect to **Section III Liability Coverage**, an **insured** also includes any individual or other legal entity given permission by you or a **family member** to use a vehicle or **watercraft** covered under this policy with respect to their legal responsibility arising out of its use.

## Insured Location

**Insured location** means:

a. The **residence premises**;
b. The part of other premises, other structures and grounds used by you as a residence; and
   1) Which is shown in the Declarations or on an endorsement; or
   2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in a. and b. above;
d. Any part of a premises where an **insured** is temporarily residing;
e. Vacant land, other than farm land, owned by or rented to an **insured**;
f. Land owned by or rented to an **insured** on which a one or two family dwelling is being built as a residence for an **insured**;
g. Individual or family cemetery plots or burial vaults of an **insured**; or
h. Any part of a premises occasionally rented to an **insured** for other than **business** use.

## Landscaping

**Landscaping** means trees, shrubs, lawns or other plants on the grounds of your **residence premises**.

## Medical Expenses

**Medical Expenses** includes reasonable charges for:

a. medical;
b. surgical;
c. X-ray;
d. dental;
e. ambulance;
f. hospital;
g. professional nursing;
h. prosthetic devices; and
i. funeral services.

## Mudflow

**Mudflow** means a river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water. Other earth movements, such as landslide, slope failure, or a saturated soil mass moving by liquidity down a slope, are not **mudflows**.

## Occurrence

**Occurrence** means an accident or act, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **personal injury** or **property damage** during the policy period.

## Other Structures

**Other structures** means outdoor structures on the grounds of your **residence premises** set apart from the **dwelling** by clear space. This includes structures connected to the **dwelling** by only a fence, utility line or similar connection.

## Personal Injury

**Personal Injury** means injury or death arising out of one or more of the following:

a. **Bodily injury**;
b. Unlawful detention, false imprisonment or false arrest;
c. Shock, emotional distress, or mental injury;
d. Invasion of privacy;
e. Defamation, libel or slander;
f. Malicious prosecution;
g. Wrongful entry or eviction; or
h. Assault and battery when committed with the intent of protecting persons.

## Primary Structural Member

**Primary structural member** means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

## Primary Structural System

**Primary structural system** means an assemblage of primary structural members.

**Principal Building**

If your **residence premises** is a **dwelling**, **principal building** means the **dwelling** where you reside on the **residence premises** shown in the Declarations, including structures attached to the **dwelling**. **Principal building** does not include any other buildings or structures at that location.

If your **residence premises** is a condominium unit or cooperative, **principal building** means the unit where you reside shown as the **residence premises** in the Declarations. **Principal building** does not include any other buildings or structures at that location.

**Property Damage**

**Property Damage** means physical injury to, destruction of, or loss of use of tangible property.

**Reconstruction Cost**

**Reconstruction cost** means the lesser of the amount required at the time of the loss to repair or replace a structure at the same location with materials and workmanship of like kind and quality. **Reconstruction cost** does not include deduction for depreciation or any amount required to comply with the enforcement of any ordinance or law.

**Recreational Motor Vehicle**

**Recreational Motor Vehicle** means:

a. A motorized land vehicle not owned by an **insured** designed for use primarily off public roads, not subject to motor vehicle registration or operator licensing;

b. A motorized land vehicle owned by an **insured** designed for use primarily off public roads, not subject to motor vehicle registration or operator licensing, and which is used solely on your **residence premises**, with the exception of vehicles used to assist the handicapped;

c. A golf cart that is not subject to motor vehicle registration or operator licensing used as a means of travel about your residence, your residence community or a golf course for golfing purposes or community or other private activities;

d. A vehicle used to assist the handicapped and not designed for or required to be registered for use on public roads; or

e. A motorized land vehicle in dead storage at your **residence premises**.

**Residence premises**

**Residence premises** means any **dwelling**, **other structures** and grounds or any condominium unit, cooperative, or apartment which is listed on your Declarations and that you own or live in.

**Structural Damage**

**Structural damage** means a **principal building**, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement-related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement-related damage to the **primary structural members** or **primary structural systems** that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those **primary structural members** or **primary structural systems** exceeds one and one-third nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose or location;

c. Damage that results in listing, leaning or buckling of the exterior load-bearing walls or other vertical **primary structural members** to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

d. Damage that results in the building, or any portion of the building containing **primary structural members** or **primary structural systems**, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

High Value Home Policy
PPHV- PCF-FL-001 (02/2016)

e.  Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

## Watercraft

**Watercraft** means a boat or craft principally designed to be propelled on, over or under water. A model boat or hobby craft not used or designed to carry people, or a boat propelled solely by human power, are not considered **watercraft**.

## Section II – PROPERTY COVERAGE

**A. Perils Insured Against**:
We insure against all risks of sudden and accidental direct physical loss or damage to your **dwelling, contents** and **other structures** unless an exclusion applies.

**B. Coverage and Loss Settlement**
1. **Dwelling**
   a.  For a covered loss, we will pay the **reconstruction cost** for your **dwelling** up to the coverage limit shown for that location on your Declarations. However, we will pay no more than the **actual cash value** if actual repair or replacement is not complete. Once actual repair or replacement is complete, we will settle the loss on a. **reconstruction cost** basis as long as you provide us with proof within 180 days of the notice of loss pursuant to **Section IV – General Provisions, B. Your Duties After a Loss** that the repair or replacement is complete.

   If the coverage limit shown for that location on your Declarations is not enough to pay the **reconstruction cost** due to a covered loss caused by a peril other than **hurricane**, we will pay any necessary additional **reconstruction cost** up to 100% of the coverage limit shown for that location on your Declarations as work is performed and expenses are incurred. We will only pay this additional amount if you maintain at least the amount of coverage for your **dwelling** as previously agreed to, including any adjustments we make based on appraisals or revaluations.

If the coverage limit shown for that location on your Declarations is not enough to pay the **reconstruction cost** due to a covered loss caused by **hurricane**, we will pay any necessary additional **reconstruction cost** up to 25% of the coverage limit shown for that location on your Declarations as work is performed and expenses are incurred. We will only pay this additional amount if you maintain at least the amount of coverage for your **dwelling** as previously agreed to, including any adjustments we make based on appraisals or revaluations.

2. **Other Structures**
   a.  For a covered loss we will pay the **reconstruction cost** for your **other structures** up to the coverage limit shown for that location on your Declarations.. However, we will pay no more than the **actual cash value** if actual repair or replacement is not complete. Once actual repair or replacement is complete, we will settle the loss on a. **reconstruction cost** basis as long as you provide us with proof within 180 days of the notice of loss pursuant to **Section IV – General Provisions, B. Your Duties After a Loss** that the repair or replacement is complete.

3. **Screen Enclosures**
   The most we will pay for the **reconstruction cost** for your screen enclosures due to a covered loss caused by wind or hail, including **hurricane** is $20,000. This sub-limit:
   a.  Applies to the screen material, frame, footings and/or anchors; and
   b.  Does not increase the applicable coverage limit shown for that location on the Declarations.

4. **Dwelling or Other Structures under Construction**
   If at any time during the policy period:
   a.  You are newly constructing your **dwelling** or **other structures**;
   b.  You are constructing additions, alterations or renovations to the **dwelling** or **other structures** and as a result have temporarily vacated the **residence premises**; or

High Value Home Policy
PPHV- PCF-FL-001 (02/2016)

c.  You are constructing additions, alterations or renovations to the **dwelling** or **other structures** and the cost will exceed 10% of the coverage amount for your **dwelling** or **other structures**;

then the most we will pay for a covered loss is the **reconstruction cost** not to exceed the coverage limit shown on your Declarations. We will pay this amount whether or not you actually repair or rebuild. You must still maintain at least the amount of coverage for your **dwelling** and **other structures** as previously agreed to, including any adjustments we make based on appraisals or revaluations. This will remain the loss settlement provision until all construction is completed, and you and we agree on the amount of coverage for your **dwelling** and **other structures**.

**5.  Contents**
The most we will pay for a covered loss to **contents** is the lesser of the amount required to repair or replace the **contents** without application of depreciation, whether or not repaired or replaced, up to the amount of coverage for **contents**. However, with respects to personal property you or a **family member** own or possess, if the **contents** are obsolete or unusable as a result of their age or condition, depreciation will be applied.

The amount of coverage for **contents** depends on where the loss occurs. For a covered loss to **contents** that occurs:

a.  Anywhere in the world away from any residence that an **insured** owns or lives in, including a **residence premises**, we will pay up to the highest **contents** limit of any single **residence premises** listed on your Declarations**.**

b.  However, for a covered loss to **contents** that occurs:

(1)  At a **residence premises** listed on your Declarations, we will pay up to the coverage limit for **contents** at that location for each covered loss;

(2)  At a residence that an **insured** owns or lives in that is insured under

another policy, we will not pay any amount under this policy; or

(3)  At a residence that an **insured** owns or lives in that is not listed on your Declarations and not insured under another policy, we will pay up to $25,000 for each covered loss.

However, if this residence has been acquired within the last sixty (60) days from the date of loss, we will pay up to the highest **contents** limit of any single **residence premises** listed on your Declarations.

The limitations in paragraphs (2) and (3) do not apply if the **contents** were moved from the **residence premises** because it is being repaired, renovated or rebuilt and is not fit to live in or store property in.

**6.  Deductible**
Unless otherwise noted in this policy, the base **deductible** or one of the special **deductibles** shown on your Declarations or by endorsement is the amount of a covered loss you will pay for each covered loss.

For a covered loss caused by a peril other than **hurricane**, earthquake or sinkhole that is greater than $50,000, we will waive the base **deductible.** This waiver of **deductible** only applies if the base **deductible** shown on your Declarations is $25,000 or less.

This waiver of **deductible** does not apply to special **deductibles** for **hurricane** or earthquake. This waiver of **deductible** also does not apply to sinkhole loss.

In lieu of the base **deductible**, the special **hurricane deductible** shown on your Declarations applies to a covered loss caused by, contributed to, or in any way resulting from **hurricane.** For a second or subsequent covered loss caused by or resulting from **hurricane**, the **hurricane deductible** is reduced by all **hurricane deductible** amounts applied toward previously covered **hurricane** losses during the same calendar year. You are required to notify us of all losses caused by **hurricane** that do not meet the **hurricane deductible** as listed on your Declarations. In

High Value Home Policy
PPHV- PCF-FL-001 (02/2016)

the event the **hurricane deductible** has been met, and there is a subsequent covered loss caused by **hurricane** in the same calendar year**,** no **deductible** will apply to the loss.

If you have had a covered loss caused by **hurricane** under a prior policy, and we offer you a lower **hurricane deductible** under the new or renewal policy, we will notify you, in writing, at the time the lower **hurricane deductible** is offered, that the lower **hurricane deductible** will not apply until January 1 of the following calendar year.

If we are providing coverage under more than one policy for **hurricane** losses in a given calendar year, the hurricane deductible will be the highest amount stated in any one of those policies.

7.  **Special Limits of Liability for Contents**
    These limits do not increase the amount of coverage for your **contents**. The special limit shown for each category below is the most we will pay for a covered loss to **contents** in that category.

    a.  Money, bank notes, bullion, gold other than gold ware, silver other than silver ware, platinum - $2,500.
        This limit is increased to $10,000 for bank notes, bullion, gold other than gold ware, silver other than silver ware, platinum that are stored in a locked home safe located on the **residence premises** or in a bank vault or bank safe deposit box.
    b.  **Watercraft**, including their trailers, furnishings, equipment and outboard engines or motors - $5,000.
    c.  Trailers not used with **watercraft** -$5,000.
    d.  Grave markers - $10,000.
    e.  Securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, negotiable papers, passports, tickets - $5,000.
    f.  Jewelry, watches, precious stones or semi precious stones, whether set or unset, that are lost, misplaced or stolen -$5,000.

    g.  Furs that are lost, misplaced or stolen - $5,000.
    h.  Guns that are lost, misplaced or stolen - $5,000.

    i.  Silverware, goldware, pewterware or trophies that are lost, misplaced or stolen - $10,000.
    j.  **Fine Arts** - $10,000.
    k.  **Collectibles** - $10,000.

8.  **Loss of Use:**
    If a covered loss to your:
    a.  **dwelling**;
    b.  **contents**; or
    c.  if your **residence premises** is a condominium, cooperative or apartment, property loss to any property located outside the boundaries of your unit;

    makes the **residence premises** not fit to live in, we cover the following. The most we will pay for any one covered loss is the coverage amount shown on your Declarations.
    a.  Additional Living Expense:
        (1) If the **residence premises** is your primary residence, we will pay the necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

        (2) If the **residence premises** is not your primary residence, we will pay the necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living for those periods of time that you had planned to use, or customarily use, the residence.

    b.  Civil Authority
        If a civil authority forces you to evacuate your **residence premises** or a civil authority prohibits you from use of your **residence premises** due to a peril that would have been covered under this Policy, we will reimburse you for the reasonable increase in living expenses incurred by you so that your household can maintain its normal standard of living for up to 30 days. The most we will pay for this coverage is $50,000.

**C.  Additional Coverages**

High Value Home Policy
PPHV- PCF-FL-001 (02/2016)

The coverages shown below are in addition to the coverage amount shown for that location on your Declarations unless otherwise indicated. Your **deductible** applies to these coverages unless otherwise indicated. These coverages are subject to Special Limits of Liability and Exclusions. Exclusions are defined in Section D.

1. **Loss Assessment**
   We will pay up to $50,000 for your share of a loss assessment charged against you during the Policy Period by a corporation or association of property owners. This coverage applies to loss assessments charged against you during the policy period, regardless of when the loss to the corporation or association of property owners occurred. This coverage only applies when the assessment is made as a result of a covered loss to the property owned by all members collectively. We will not pay for assessments made as a result of loss caused by or resulting from earthquake. We will pay your portion of an assessment charged as a result of an ensuing covered loss due to theft, explosion, fire or glass breakage, unless another exclusion applies. A **deductible** does not apply to this coverage.

   The maximum amount of any unit-owner's loss assessment coverage that can be assessed for any loss shall be equal to the unit owner's loss assessment coverage limit in effect one day before the date the damage resulting in the assessment occurred. Any changes to the limits of a unit-owner's coverage for loss assessments made on or after the day before the date the damage resulting in the assessment occurred are not applicable to such loss. This paragraph applies only if your **residence premises** is a condominium unit.

   We will not pay more than $10,000 for any assessment that results from a loss as a result of **hurricane** or from a **deductible** in your Association's insurance coverage.

   **Section IV – General Provisions, C. Policy Term** does not apply to this Additional Coverage.

2. **Back Up of Sewers and Drains**
   a. We will pay up to the lesser of the coverage limits shown on your Declarations or

$100,000 for physical loss or damage to property caused by water or waterborne material which:

(1) Backs up through sewer openings or drain openings located inside a fully enclosed structure on the **residence premises**;

(2) Enters a sump pit or related equipment solely from below the surface of the ground and overflows from the sump pit or related equipment as a result of:
   i.   mechanical breakdown of;
   ii.  power supply failure to; or
   iii. the overwhelming of
   a sump pump or related equipment; or

If there is evidence of a **flood** on or adjacent to the **residence premises**, we will not pay anything under this coverage.

These payments do not increase your coverage amount.

3. **Construction Materials**
   We will pay for a covered loss to materials and supplies owned by you at each location shown on your Declarations for use in the repair, alteration, or construction of your **residence premises**. These payments do not increase your coverage amount.

4. **Data Replacement**
   We will pay up to $10,000 for expenses you incur to replace your personal data stored on a personal computer or portable computing device lost as a result of:
   a. a covered loss;
   b. a computer virus, worm or malware; or
   c. the unauthorized electronic access or use of an **insured's** personal computer or portable computing device.

   The unauthorized electronic access or use must be committed by someone other than an **insured** for coverage to apply.

   A **deductible** does not apply to this coverage.

5. **Debris Removal**

We will pay the reasonable expenses you incur to remove debris of covered property resulting from a covered loss from the **residence premises**.

If the **residence premises** is a house, these payments increase the amount of your coverage by 10% of the **dwelling** limit shown on your Declarations. If the **residence premises** is a condominium, cooperative or apartment, these payments increase the amount of your coverage by 10% of the **contents** limit shown on your Declarations.

6.  **Ensuing Fungi or Bacteria**
    For a covered loss we will not pay more than $10,000 for all increased costs that are **fungi** or bacteria remediation expenses described below. This **fungi** or bacteria remediation expense limit does not increase your coverage amount.

    **Fungi** or bacteria remediation means the reasonable and necessary costs for:

    a.  Testing and monitoring the air or property to confirm the absence, presence or level of **fungi** or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be paid only to the extent that there is a reason to believe that there is the presence of **fungi** or bacteria;
    b.  Developing a **fungi** or bacteria remediation plan and implementing that **fungi** or bacteria remediation plan including the cleanup, removal, containment, treatment, or disposal of **fungi** or bacteria;
    c.  Tearing out and replacing any part of the building or other covered property as needed to gain access to the **fungi** or bacteria beyond that which is required to gain access to covered property physically damaged by a covered loss;
    d.  Removing debris of covered property containing **fungi** or bacteria beyond that which is required to remove debris of the covered property physically damaged by a covered loss; and
    e.  Repairing or replacing covered property containing **fungi** or bacteria beyond that which is required to repair or replace the

covered property physically damaged by a covered loss.

**Fungi** or bacteria remediation expenses also includes coverage for loss of use of your **residence premises** resulting from **fungi** or bacteria.

Loss of use means:
a.  The necessary reasonable increase in living expenses incurred by you so that your household can maintain its normal standard of living while your **residence premises** is uninhabitable; and
b.  For a **residence premises** that is rented out, the amount of rent shown on a signed lease agreement, less any expenses that do not continue, while the **residence premises** is uninhabitable.

$10,000 is the most we will pay regardless of the number of locations insured, or the number of claims. We will not make any additional payments for ensuing **fungi** or bacteria under any other part of this policy.

7.  **Fire Department Service Charge**
    We will pay the charges imposed by law or assumed in writing for fire department charges. This coverage applies when the fire department is called to save or protect a **residence premises** listed on your Declarations. Your **deductible** does not apply to this coverage.

8.  **Food Spoilage**
    We will cover food that is contained or stored in a refrigerator or freezer at your **residence premises** which spoils due to:

    a.  Changes or extremes in temperature caused by an interruption of the power supply; or
    b.  Caused by the mechanical or electrical breakdown of refrigeration equipment.

    Food Spoilage does not include any loss to wine. These payments do not increase your coverage amount.

9.  **Incidental Business Property**
    We will pay up to $25,000 for a covered loss to property owned or leased by you and used for an **incidental business** conducted at a

High Value Home Policy
PPHV- PCF-FL-001 (02/2016)

residence premises listed on your Declarations.

10. **Land**
We will pay up to 10% of the amount of a covered loss to your **dwelling** or **other structures** for the required stabilization, excavation, or replacement of land under or around your **dwelling** or **other structures.**

These payments do not increase your coverage amount for losses caused by or resulting from **hurricane.**

11. **Landscaping**
We will pay for loss or damage to landscaping caused by:

    a.  fire or lightning;
    b.  explosion;
    c.  riot or civil commotion;
    d.  aircraft;
    e.  vehicles not owned or operated by a person who lives at the **residence premises;**
    f.  vandalism or malicious mischief; or
    g.  theft.

We will pay up to the greater of 5% of the coverage limit for **dwellings** or **contents** shown on your Declarations for the **residence premises** at which the covered loss occurs. The most we will pay for any one tree, shrub or plant is $5,000.

This additional coverage is only applicable if you notify us of your intent to repair or replace the damaged landscaping within 180 days of the:
    a.  Date of loss if the loss is to the **landscaping** only; or
    b.  Completion of the repair or rebuilding of the **residence premises.**

12. **Lock Replacement**
If the keys to the **residence premises** listed on your Declarations are lost or stolen, we will pay for the cost to replace the locks to that **residence premises.** Your **deductible** does not apply to this coverage.

13. **Loss by Domestic Animals**

We will pay for loss to your **dwelling, other structures**, and **contents** caused by domestic animals.

14. **Loss to a Pair or Set or Parts**
For a covered loss to a pair or set, we will pay the lesser of:

    a.  The cost to replace any part to restore the pair or set to its value before the loss;
    b.  The cost to repair any part to restore the pair or set to its value before the loss; or
    c.  The difference between the market value of the pair or set before and after the loss.

However, if you agree to give us the remaining article(s) of the pair or set we will pay the full replacement cost of the entire pair or set.

These payments do not increase your coverage amount.

15. **Mine Subsidence**
We will pay for direct physical loss to your **dwelling** and **other structures** caused by mine subsidence. Mine subsidence means the lateral or vertical movement of a man-made underground mine or mine-related excavations.

16. **Precautionary Repairs**
We will pay the reasonable expenses incurred by you for the necessary measures taken to protect covered property that is damaged by a covered peril, from further damage.

These payments do not increase your coverage amount.

17. **Property Removal**
We will pay the reasonable expenses you incur to move **contents** from a **residence premises** to protect the **contents** from damage from a covered loss.

18. **Property of Domestic Staff, Guests, and Others**
We cover personal property owned by:

    a.  Others while the property is on the part of the **residence premises** occupied by an **insured**; or

b. A guest or a domestic staff, while the property is in any residence occupied by an **insured**.

These payments do not increase your coverage amount.

**19. Rebuilding to Code**

We will pay the necessary cost for you to comply with any law or ordinance requiring or regulating the:
a. Construction;
b. Demolition;
c. Remodeling;
d. Renovation; or
e. Repair;
of a covered property damaged by a covered loss, including removal of any resulting debris.

We will pay up to the coverage limit shown on your Declarations for this additional coverage. This coverage only applies if you choose to repair, rebuild or replace your **dwelling, other structure,** or improvements and betterments.

However, if you rebuild at a location other than where the covered loss occurred, we will pay the lesser of:
a. The amount of coverage for rebuilding to code for the location where the covered loss occurred;
b. The amount of the costs you would have incurred to conform to any law or ordinance at the location where the covered loss occurred; or
c. The amount of the costs you incur to conform to any law or ordinance regulating the replacement of your dwelling or other structures at the location where you choose to rebuild.

**20. Credit Card, Electronic Fund Transfer Card or Access Device, Forgery, and Counterfeit Money**

We will pay up to $10,000 for:
a. The legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in an **insured's** name;
b. Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal

or transfer of funds, issued to or registered in an **insured's** name;
c. Theft of any unrecovered money from an **insured's** personal account held with a financial institution resulting from unauthorized electronic access and use of the account by someone other than an **insured**;
d. Loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and
e. Loss to an **insured** through acceptance in good faith any counterfeit paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability. If a suit is brought against an **insured** for liability for **20.**a. and **20.**b. above, we will provide a defense at our expense by counsel of our choice. We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under **20.**d. above.

Our limit of liability for this coverage will be reduced by any amount of money recovered or reimbursed by the financial institution with which the account, credit card or access device is held

A **deductible** does not apply to this coverage.

**21. Identity Fraud Expense Coverage**
a. If you are a victim of "identity fraud" we will, with your consent, appoint and pay the full cost of, an identity fraud restoration specialist to restore your credit record and identity. Provided that we select the identity fraud restoration specialist we will pay the full cost of the specialist. If you choose a different method of restoring your credit record and identity we will pay your "identity fraud expenses" up to a maximum of $25,000, for each individual identity fraud perpetrated. No **deductible** applies to this coverage.

"Identity Fraud" means the act of knowingly transferring or using, without lawful authority, a means of identification of an **insured.** This must be done with the intent to commit, or to aid or abet another to commit, an unlawful activity that constitutes a violation of federal law or a crime under any applicable state or local law.

b.   "Identity Fraud Expense" means:
(1)  Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;
(2)  Costs for sending certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;
(3)  Lost wages as a result of time off from work to meet with law enforcement agencies, credit agencies, merchants or legal counsel or to complete fraud affidavits, up to $500 per week for a maximum of 2 weeks;
(4)  Loan application fees for reapplying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information;
(5)  Reasonable attorney fees incurred with our prior consent, as a result of **identity fraud** to:
   i.   Defend lawsuits brought against an insured by merchants, financial institutions, or their collection agencies;
   ii.  Remove any criminal or civil judgments wrongly entered against an **insured**; and
   iii. Challenge the accuracy or completeness of any information in an **insured's** consumer credit report.

(6)  Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors or credit agencies to report or discuss an actual **identity fraud**.

This coverage does not apply to losses covered under Credit Card, Electronic Fund Transfer Card or Access Device, Forgery, and Counterfeit Money. This coverage does not apply where an **insured** or someone acting at the direction of an **insured** commits a fraudulent, dishonest or criminal act, whether acting alone or in concert with others.

**22. Loss Mitigation Measures**
In the event of a covered loss, for which we pay $10,000 or more, we will also pay for the reasonable costs you incur up to $2,500 for the installation of an approved loss mitigation measure or loss prevention device to protect your **residence premises** against a subsequent and similar loss in the future. This additional coverage does not apply to losses that result from **hurricane** or named storm.

Examples of approved loss prevention devices include, but are not limited to, fire alarm systems, fire suppression systems, security systems, sump pumps, automatic water shut-off devices, lightning suppression systems and back-up power systems.

These payments do not increase your coverage amount.

**23. Environmentally Friendly Upgrades**
In the event of a covered loss that exceeds your deductible we will pay up to $50,000 for additional costs incurred to use approved environmentally friendly materials, fixtures, appliances or methods in the necessary rebuilding, repairing or replacing of your **dwelling, other structures** or **contents**.

Under no circumstances will this additional coverage serve to reduce or limit coverage provided under **Section II – PROPERTY COVERAGE**.

Examples of approved environmentally friendly materials, fixtures, appliances and methods include, but are not limited to, appliances and lighting, heating and cooling systems that meet Energy Star or equivalent levels of efficiency and building materials that are sustainably produced, responsibly harvested or composed of recycled content.

These payments do not increase your coverage amount.

**24. Pet Injury**

We will pay up to $5,000 for each occurrence for any necessary **medical expenses** to domestic animals owned by, or in the care, custody and control of an **insured** that arises due to a covered loss. Your **deductible** does not apply to this coverage.

**D. Exclusions**

The following exclusions apply to **Section II – PROPERTY COVERAGE**.

**1. Aircraft**

We do not cover any loss to an **aircraft** or its parts, whether or not attached to the **aircraft**.

**2. Business Property**

We do not cover any loss to property that is owned by or used for any **business**, except **incidental business** property.

**3. Governmental Action**

We do not cover any loss caused by governmental action. Governmental action means the destruction, confiscation or seizure by order of any government or public authority. This exclusion does not apply to such acts ordered by any governmental or public authority that are taken to prevent the spread of fire.

**4. Dishonest Acts**

We do not cover any loss caused by any dishonest or criminal act by you or a **family member**, or by a person directed by you or a family member.

**5. Earth Movement**

We do not cover any loss to your **dwelling** or **other structures** caused by earth movement. Earth movement means:

a. Earthquake, including land shock waves or tremors, before, during or after a volcanic eruption;
b. Landslides;
c. Mudflows;
d. Mudslides; and
e. the sinking, rising, or shifting of land.

However, we do insure ensuing covered loss due to theft, fire, glass breakage or explosion unless another exclusion applies. This Exclusion **5.** does not apply to **Catastrophic Ground Cover Collapse**.

**6. Faulty, Inadequate or Defective Planning**

We do not cover any loss caused by faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;
b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
c. Materials used in repair, construction, renovation or remodeling; or
d. Maintenance;

of part or all of any property whether on or off the **residence premises**.

However, we do insure ensuing covered loss to your **dwelling** and **other structures** unless another exclusion applies.

**7. Fungi, Wet or Dry Rot or Bacteria**

We do not cover any loss caused by the presence, growth, proliferation, spread or any activity of **fungi**, wet or dry rot, or bacteria. This includes the cost to test for, monitor, clean up, move, remediate, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of **fungi**, wet or dry rot, or bacteria.

This exclusion does not apply:

a. To coverage provided under **SECTION II – PROPERTY- COVERAGE**, Additional Coverage: Ensuing Fungi or Bacteria; or
b. When **fungi**, wet or dry rot, or bacteria results from fire or lightning, unless another exclusion applies.

**8. Wear and Tear, Deterioration or Mechanical Breakdown**

We do not cover any loss caused by:

a. wear and tear, marring, and deterioration;
b. warping, rust or, other corrosion;
c. mechanical breakdown;
d. latent defect;

e.  inherent vice; or

f.  any quality in property that causes it to damage or destroy itself.

However, we do insure ensuing covered loss unless another exclusion applies.

**9.   Intentional Loss**

We do not cover intentional loss. An intentional loss means any loss arising out of any act an **insured** commits or conspires to commit with the intent to cause a loss. In the event of such loss, no **insured** is entitled to coverage, even **insureds** that did not commit or conspire to commit the act causing the loss.

**10.  Loss by Birds, Vermin, Bats, Rodents or Insects**

We do not cover any loss caused by birds, vermin, bats, rodents or insects. However, we do insure ensuing covered loss unless another exclusion applies.

**11.  Loss to Fish, Birds or Animals**

We do not cover any loss to fish, birds or other animals.

This Exclusion **11.** does not apply to the extent coverage is provided under Additional Coverage **25. Pet Injury**.

**12.  Motorized Land Vehicles**

We do not cover any loss to a motorized land vehicle, other than a **recreational motor vehicle.**

**13.  Nuclear Hazard**

We do not cover any loss caused directly or indirectly by nuclear hazard.  Nuclear hazard means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. However, we do cover ensuing covered loss due to fire, explosion or smoke resulting from a nuclear hazard unless another exclusion applies.

**14.  Pollution or Contamination**

We do not cover any loss caused directly or indirectly, regardless of cause or event, whether contributing concurrently or in any sequence to the loss, caused by:

a.  Discharge;

b.  Dispersal;

c.  Seepage

d.  Migration;

e.  Release; or

f.  Escape

of pollutants. Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

However, we do insure ensuing covered loss unless another exclusion applies.

**15.  Property of Others**

We do not cover any loss to property of roomers, boarders, or other tenants. This exclusion does not apply to property of roomers or boarders related to an **insured**.

**16.  Renovations and Repairs**

We do not cover any loss caused by renovating, refinishing or repairing any kind of **contents**. This exclusion does not apply to jewelry, watches, and furs.

**17.  Structural Movement**

We do not cover any loss caused by the settling, shrinking, bulging or expansion, including resultant cracking, of the following:

a.  Bulkheads;

b.  Pavements, patios;

c.  Footings, foundations; or

d.  Walls, floors, roofs or ceilings.

However, we do insure ensuing covered loss unless another exclusion applies.

**18.  War**

We do not cover any loss caused directly or indirectly by war.  War includes the following and any consequence(s) of any of the following:

a.  Undeclared war, civil war, insurrection, rebellion or revolution;

b.  Warlike act by a military force or military personnel; or

c.  Destruction, seizure or use for a military purpose

High Value Home Policy
PPHV- PCF-FL-001 (02/2016)

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

19. **Watercraft**
We do not cover any loss caused by the stranding, swamping or sinking of a **watercraft** or its trailer, or outboard motor. We also do not cover any loss caused by collision of a **watercraft** other than collision with a land vehicle unless another exclusion applies. We also do not cover any loss to **watercraft** caused by or resulting from a **hurricane.**

20. **Flood or Surface Water**
We do not cover any loss caused directly or indirectly by **flood** or surface water. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. **Flood** or surface water means:

a. **Flood;**
b. Surface water, water accumulated outside of a building or structure, including but not limited to standing or ponding water, waves, including tidal wave and tsunami, tides, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; including storm surge;

c. Run-off of water from any surface; or

d. Water-borne material carried or otherwise moved by any of the water referred to in **20.**a. to **20.**c. of this Exclusion.

However, we do insure ensuing covered loss unless another exclusion applies.

21. **Ground Water**
We do not cover any loss caused directly or indirectly by ground water. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. Ground water means:
a. water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a floor, wall, building, sidewalk, driveway, patio, foundation, swimming pool or structure; or

b. waterborne material carried or otherwise moved by any of the water referred to in **21.**a. of this Exclusion.

However, we do insure ensuing covered loss unless another exclusion applies.

This Exclusion does not apply to the extent coverage is provided in **C. Additional Coverages**, **2. Back Up of Sewers and Drains**.

22. **Temperature, Dampness or Humidity**
We do not cover any loss caused by extremes of temperature, dampness, humidity or dryness of air, or water vapor to your **dwelling, other structures** or **contents**. This exclusion does not apply to:
a. Loss caused directly by rain, sleet, snow or hail; or
b. Coverage provided under **SECTION II – PROPERTY COVERAGE**, **Additional Coverage**, **Food Spoilage**.

23. **Water Damage to Specific other structures**
We do not cover loss to specific **other structures** caused by:
a. Freezing;
b. Thawing;
c. Pressure or weight of water or ice, whether driven by wind or not.

This exclusion applies to:
a. fences, pavements, patios or tennis courts;
b. swimming pools, hot tubs or septic systems;
c. footings, foundations, bulkheads, retaining walls, or any structure or device that supports all or part of a building, or **other structure**; or
d. piers, wharves, docks or bridges.

However, we do insure ensuing covered loss unless another exclusion applies.

24. **Water Damage as a result of Failure to Maintain Heat**
We do not cover any loss caused by water freezing in plumbing, heating, air conditioning, automatic fire protective sprinkler system or household appliance unless you have used reasonable care to:
a. maintain proper heat in your residence; or

b. close and drain the water system or appliances if the home is vacant, "unoccupied" or being constructed.

"Unoccupied" means when the occupant(s) of the **residence premises** are absent for 30 or more consecutive days.

However, if the residence is equipped with a automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain proper heat in the residence for coverage to apply.

**25. Back Up of Sewers and Drains**
We do not cover any loss caused by water or waterborne material which:
a. backs up through sewers or drains; or
b. overflows or is otherwise discharged from a sump, sump pump or related equipment.

This exclusion does not apply to the extent coverage is provided in **C. Additional Coverages**, **2. Back Up of Sewers and Drains**.

---

### Section III – LIABILITY COVERAGE

**A. Personal Liability**
If a claim is made or a suit is brought against an **insured** for **damages** because of **personal injury** or **property damage** caused by an **occurrence** anywhere in the world to which this coverage applies, we will:

1. Pay up to the applicable liability coverage limit for **damages** for which an **insured** is legally liable. We will not pay more than the:
   a. liability coverage limit shown on your Declarations for any single **occurrence** at an **insured location**; or
   b. highest liability coverage limit shown on the Declarations of any in-force homeowner's policy issued by us where you are a "named insured" for an **occurrence**:
      (1) away from a **insured location**; or
      (2) at a residence you own or live in that is not covered by any other liability insurance coverage,
   regardless of the number of **insureds**, **insured locations**, claims made or persons injured; and

2. Provide a defense at our expense even if the suit is groundless, false or fraudulent. You may chose counsel from a panel of firms that we have selected. We reserve the right to assign counsel if a panel has not been selected in the jurisdiction in which the suit is brought or the claim is made. We may investigate and settle any claim or suit at our discretion. Our duty to settle or defend ends when the liability coverage limit for the **occurrence** has been exhausted by payment of a judgment or settlement. Costs of providing a defense, other than settlement payments, are in addition to the liability coverage limit.

**B. Medical Payments to Others**
We will pay up to the amount shown on the Declarations for necessary **medical expenses** that are incurred or medically ascertained within three (3) years from the date of an accident causing **bodily injury**. The amount shown on the Declarations is the most we will pay per person regardless of the number of **insured locations** or in-force homeowners' policies issued by us. This coverage does not apply to you or a **family member**. This coverage applies only:

1. To a person on the **insured location** with the permission of you or a **family member**; or

2. To a person off the **insured location** if the **bodily injury**:
   a. Arises out of a condition at the **insured location**, or the ways immediately adjoining the **insured location**;
   b. Is caused by the activities of an insured;
   c. Is caused by a domestic worker in the course of his or her employment by an **insured**; or
   d. Is caused by an animal owned by or in the care of an **insured**.

**C. Additional Coverages**
We cover the following in addition to the liability coverage limit, unless stated otherwise:

1. **Claims Expenses**
   We will pay:
      a. Expenses we incur and court costs **taxed** against an **insured** in any suit we defend;

b.  Reasonable expenses incurred by an **insured** at our request. This includes actual loss of earnings (but not loss of other income) up to a total of $10,000, for assisting us in the investigation or defense of a claim or suit;

c.  Premiums on bonds required in a suit we defend. This does not apply to bond amounts more than the Liability coverage limit shown on your Declarations. We need not apply for or furnish any bond; and

d.  Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court, that part of the judgment which does not exceed the Liability coverage limit.

**2.  Damage to Property of Others**
We will pay up to $10,000 per **occurrence** to repair or replace the property of others damaged by an **insured**. If your **residence premises** is a condominium, cooperative or apartment unit we will pay up to $25,000 per **occurrence** to repair or replace the property of others damaged by an **insured**.

The applicable limit of liability for this coverage is the most we will pay for any one **occurrence** regardless of the number of claims made or **residence premises** shown on the Declarations.

**3.  Loss Assessment**
We will pay up to $50,000 for your share of a loss assessment charged against you during the policy period as owner or tenant of the **residence premises** regardless of when the loss to the corporation or association of property owners occurred, when the assessment is made as a result of **personal injury** or **property damage** covered under Section III of this policy. This includes damage resulting from an act of a director, officer or trustee, in the capacity as a director, officer or trustee, provided:
a.  the director, officer or trustee is elected by members of corporation or association of property owners; and

b.  the director, officer, or trustee is not compensated for their duties which are solely on behalf of a corporation or association of property owners.

This coverage only applies when the assessment is charged against you as part of an assessment against multiple members of a property owners or tenant association managing a **residence premises**. Regardless of the number of assessments, the limit of $50,000 is the most we will pay for loss arising out of:

a.  one accident, including continuous or repeated exposure to substantially the same general harmful condition; or
b.  a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

We will not pay for any assessments charged against you or a corporation or association of property owners by any governmental body.

We will not pay more than $10,000 for any assessment that results from a **deductible** in your Association's insurance coverage.

These payments do not increase your coverage amount.

**Section IV – General Provisions**, **C. Policy Term** does not apply to this Additional Coverage.

**4.  First Aid**
We will pay expenses for first aid to others incurred by an **insured** for **damages** for **bodily injury** covered under this policy. However, we will not pay for first aid to any **insured**.

**D.  Exclusions**
We do not provide coverage for **damages**, defense costs or any other cost or expense for:

**1.  Motorized Land Vehicles**
**Personal injury** or **property damage** arising out of the:
a.  ownership;
b.  maintenance;

High Value Home Policy
PPHV- PCF-FL-001 (02/2016)

c.   operation; or
d.   loading or unloading

of any motorized land vehicle. This exclusion
does not apply to **recreational motor vehicles**
except when they are used for participation in
or practice for competitive racing.

2.  **Aircraft**
**Personal injury** or **property damage** arising
out of the:
a.   ownership;
b.   maintenance;
c.   operation;
d.   use;
e.   loading;
f.   unloading; or
g.   towing

of any **aircraft**.

3.  **Watercraft**
**Personal injury** or **property damage** arising
out of the ownership, maintenance, operation,
use, loading or unloading, or towing of any
**watercraft**:

a.   That is over 26 feet in length or has more
than 50 horsepower, other than
**watercraft** furnished or rented to an
**insured** for less than 30 days;
b.   Used for any **business** or commercial
purpose; or
c.   Used for participation in or practice for
competitive racing (this exclusion does not
apply to sailing vessels less than 26 feet in
length).

4.  **Workers' Compensation or Disability**
Any **damages** or benefits an **insured** is legally
obligated to provide under any:

a.   workers' compensation;
b.   disability benefits;
c.   Jones Act or General Maritime Law;
d.   unemployment compensation;
e.   occupational disease; or
f.   similar law.

5.  **Directors or Officers Errors or Omissions**
**Personal injury** or **property damage** arising
out of an **insured's** actions, errors or
omissions as a director or officer of any

corporation or organization. This exclusion
does not apply to **personal injury** or **property
damage** arising out of an **insured's** activities
for a;

a.   Condominium or Cooperative Association;
or
b.   Not for profit corporation or organization.

6.  **Property in Your Care**
**Property damage** to property owned by, or in
the custody, care or control of, an **insured**.
This exclusion does not apply to **property
damage**:

a.   Caused by fire, smoke or explosion; or
b.   To a residence that you rent to live in.

7.  **Insured**
**Personal injury** to you or an **insured** under
this policy.

8.  **Discrimination**
**Personal injury** or **property damage** arising
out of actual, alleged or threatened
discrimination or harassment due to:
a.   Age;
b.   race;
c.   national origin;
d.   color;
e.   sex;
f.   creed;
g.   handicapped status;
h.   sexual preference; or
i.   any other discrimination.

9.  **Sexual Molestation, Corporal Punishment
or Physical or Mental Abuse**
**Personal injury** or **property damage** arising
out of sexual molestation, corporal
punishment or physical or mental abuse.

10. **Communicable Disease**
**Personal injury** or **property damage** which
arises out of the transmission of a
communicable disease by an **insured.**

11. **Business**
**Personal injury** or **property damage** arising
out of or in connection with an **insured's
business** property or **business** pursuits.
However, this exclusion does not apply to:

**Incidental business** property or **incidental business** pursuits; or

a. **Personal injury** or **property damage** arising out of the physical condition of your **residence premises** when **business** or professional activities are legally conducted by any **insured** at that **residence premises** and;

b. There are no employees conducting **business** activities at your **residence premises** who are subject to workers' compensation or other similar disability laws;

c. You are not a home day care provider; and

d. There is no other valid collectible insurance.

**12. Professional Services**
**Personal Injury** or **property damage** arising out of the rendering of or failure to render professional services.

**13. War**
**Personal injury** or **property damage** caused directly or indirectly by war, including any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**14. Claims Settled Without Our Consent**
Any claim settled with a third party without our written consent regardless of the cause of loss, or any related expenses such as:

a. court costs;

b. legal expense; or

c. judgment,

when such settlement prejudices our rights to recovery

**15. Nuclear Hazard**
**Personal Injury** or **property damage** caused directly or indirectly by nuclear hazard. Nuclear hazard means:

a. any nuclear reaction;

b. radiation; or

c. radioactive contamination

all whether controlled or uncontrolled or however caused. We do cover subsequent loss due to fire resulting from a nuclear hazard unless another exclusion applies.

**16. Expected or Intended Injury**
**Personal injury** or **property damage** resulting from any criminal, willful, intentional, or malicious act or omission by any **insured** which is intended to result in, or would be expected by a reasonable person to cause **personal injury** or **property damage**. This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person than expected or intended. This exclusion does not apply to **bodily injury** if the **insured** acted with reasonable force to protect any person or property.

**17. Wrongful Employment Act**
**Personal injury** arising out of wrongful termination of employment.

**18. Controlled Substances**
**Personal injury** or **property damage** arising out of the
a. Use;
b. Sale;
c. Manufacture;
d. Delivery; or
e. Transfer or possession

by any person of a controlled substance as defined under federal law.

Substances include but are not limited to cocaine, LSD, marijuana, and all narcotic drugs. This exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed health care professional.

**19. Contract or Agreement**
**Personal Injury** or **property damage** arising from any contract or agreement entered into by an **insured**. However, this exclusion does not apply to any contracts:

a. That directly relate to the ownership, maintenance, or use of an insured location; or

High Value Home Policy
PPHV- PCF-FL-001 (02/2016)

b.  Where the liability of others is assumed by you prior to an **occurrence**.

20. **Premises That Are Not An Insured Location**
**Personal Injury** or **property damage** committed or occurring on, arising out of, or in connection with premises:
a.  Owned by an **insured;**
b.  Rented to an **insured;** or
c.  Rented to others by an **insured;**
that is not an **insured location**.

---

### Section IV– GENERAL PROVISIONS

**A.  Insurable Interest**
Even if more than one person or party has an insurable interest in the property covered under this policy, we will not be liable in any one loss:

1.  To an **insured** for more than the amount of such **insureds** interest at the time of loss; or
2.  For more than the applicable limit of liability.

**B.  Your Duties After a Loss**
In case of a loss for which coverage may be provided under this Policy, we have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an **insured** seeking coverage, or a representative or either:

1.  Give prompt notice to us or your insurance agent.
Except for Precautionary Repairs taken under Additional Coverage **C.16** of **Section II**, there is no coverage for repairs that begin before the earlier of:
a.  72 hours after we are notified of the loss;
b.  The time of loss inspection by us; or
c.  The time of other approval by us;

2.  To the degree reasonably possible, retain the damaged property; and allow us to inspect, subject to this paragraph 2, all damaged property prior to its removal from the **residence premises**;

3.  A claim, supplemental claim or reopened claim for loss or damage caused by **hurricane** or other windstorm must be given to us in accordance with the terms of this policy within

three years after the **hurricane** first made landfall or a windstorm other than **hurricane** caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.) Any initial, supplemental or reopened claim for loss or damage caused by **hurricane** or other windstorm is barred if notice of the claim in accordance with this Paragraph is not provided.

This provision concerning time for submission of a claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this policy under the Suit Against Us Provision including any amendment to that condition.

4.  Notify the police in case of loss by theft;

5.  Notify the credit card or electronic fund transfer card or access device company in case of loss under Credit Card, Electronic Fund Transfer Card or Access Device, Forgery, and Counterfeit Money coverage;

6.  Protect the covered property from further damage. The following must be done:
a.  Take reasonable emergency measures that are necessary to protect the covered property from further damage, as provided under Additional Coverage **C.16** of **Section II**.
A reasonable emergency measure under 6.a. above may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect; and

b.  Keep an accurate record of repair expenses;

7.  Cooperate with us in the investigation of a claim, settlement or the defense of any claim or suit.

8.  Prepare an inventory of damaged property. Show the quantity, description and amount of loss. Attach all bills, receipts and related

documents that justify the figures in the inventory;

9. As often as we reasonably require:
   a. Show the damaged property;
   b. Provide us with records and documents we request and permit us to make copies; and
   c. Submit to separate examination under oath.

10. Send to us, within 60 days of our request, your signed, sworn proof of loss. The proof of loss must set forth, to the best of your knowledge and belief:
   a. The time and cause of loss;
   b. The interest of all **insureds** and all others in the property involved and all liens on the property;
   c. Other insurance which may cover the loss;
   d. Changes in title or occupancy of the property during the term of the policy;
   e. Specifications of damaged buildings and detailed repair estimates;
   f. The inventory of damaged **contents** described in 8. above;
   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and
   h. Evidence or affidavit that supports a claim under Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

11. Provide us with the names and addresses of any claimants and witnesses;

12. Promptly forward to us every notice, demand, summons or other process relating to the **occurrence**.

13. At our request, assist us:
   a. To make settlement;
   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an **insured**;
   c. With the conduct of suits and attend hearings and trials; and
   d. To secure and give evidence and obtain the attendance of witnesses.

14. No **insured** shall, except at such **insured's** own cost, voluntarily make payment, assume

obligation or expense other than for first aid to others at the time of loss.

The duties above apply regardless of whether you, an **insured** seeking coverage, or a representative of either retains or is assisted by a party who provides legal advice, insurance advice or expert claim advice, regarding an insurance claim under this Policy.

**C. Policy Term**
This policy applies only to a covered loss which occurs during the policy period.

**D. Recovered Property**
In the event we pay for a covered loss to property and the property is recovered, we will offer you an opportunity to buy it back.

**E. Assignment**
Assignment of this policy, including any entitlement to benefits thereunder, will not be valid unless we give our written consent.

**F. Waiver or Change of Policy Provisions**
A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**G. Concealment or Fraud**
We do not provide coverage to an **insured** who, whether before or after a loss, has:
   a. Intentionally concealed or misrepresented any material fact or circumstance;
   b. Engaged in fraudulent conduct; or
   c. Made false material statements;
relating to this insurance.

However, if this Policy has been in effect for more than 90 days, we may not deny a claim filed by you or an **insured** on the basis of credit information available in public records.

**H. Conformity to Law**
If any part of this policy conflicts with state or local law, this policy is amended to conform to those laws.

**I. Bankruptcy**
Bankruptcy or insolvency of an **insured** will not relieve us of our duties under this policy.

**J.   Death of an Insured**

In the event of the death of an **insured**, this policy will cover the legal representative of the deceased for the remainder of the Policy Period unless cancelled. We will cover the legal representative of the deceased only with respect to the premises and property of the deceased covered under this policy at the time of death.

**K.   Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms of this policy. The action must be brought against us within five years after the date of loss.

**L.   Mediation or Appraisal**

If you and we fail to agree if coverage exists under this policy for a loss; or on the amount of loss, either may demand a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. If we fail to agree on the amount of loss, the loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and, you have not rescinded the settlement within 3 business days of reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provide to you.

We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

If you and we fail to agree on the amount of loss, either may request an appraisal of the loss. The request must be mutually agreed between you and we. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **residence premises** is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

Each party will:
a.   Pay its own appraiser; and
b.   Bear the other expenses of the appraisal and umpire equally.

**M.   Other Insurance and Service Agreement**
1.   The following applies with respects to coverage provided under **SECTION II – PROPERTY COVERAGE**:
   a.   If your **residence premises** is a **dwelling** and if a loss covered by this policy is also covered by:
      1)   Other insurance; we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss. However, this insurance is excess over any amounts payable from any insurance available from the **National Flood Insurance Program (NFIP)**; or
      2)   A service agreement; this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized by insurance.

   b.   If your **residence premises** is a condominium or cooperative and if a loss covered by this policy is also covered by other insurance or a service agreement covering the same property, this insurance will be excess over the amount recoverable under such other insurance or service agreement.

   However, if a loss covered by this policy is covered by other insurance covering the same property and such other insurance is:

High Value Home Policy
PPHV- PCF-FL-001 (02/2016)

1) Excess insurance over the amount recoverable under any other policy covering the same property; or
2) Other unit-owner insurance for improvements or additions to the condominium property that benefits fewer than all unit-owners;

we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of such insurance covering the loss.

c.  Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

d.  We will not pay for any loss for an item of jewelry, watch, or precious stone that is specifically scheduled and insured under another policy.

2.  Any coverage under **SECTION III - LIABILITY COVERAGE** will be excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

However, we will not provide any coverage under this Section if coverage for an **occurrence** is provided by a separate employers' liability policy.

**N. Mortgage Clause**
If a mortgagee is named in this policy, any covered loss under **Dwelling** or **Other Structures** coverages will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named in this policy, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

1.  Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

2.  Pays any premium due under this policy on demand if you have neglected to pay the premium; and

3.  Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so.

If we decide to cancel or not renew this policy, we will notify the mortgagee at least 10 days before the date cancellation or non-renewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

1.  We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

2.  At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest.  In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**O. Cancellation**
1.  You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.
2.  We may cancel only for the following reasons:
    a.  When this policy has been in effect for 90 days or less and it is not a renewal Policy, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.
    b.  We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.
        (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

High Value Home Policy
PPHV- PCF-FL-001 (02/2016)

(2) When this policy has been in effect for 90 days or less and it is not a renewal Policy, we may cancel for any reason by letting you know at least 20 days before the date cancellation takes effect.

(3) When this policy has been in effect for more than 90 days or it is a renewal Policy, we may cancel:

    (a) If there has been a material misstatement;

    (b) If the risk has changed substantially since the policy was issued;

    (c) In the event of failure to comply within 90 days after the effective date of coverage with underwriting requirements established by us before the effective date of coverage;

    (d) If the cancellation is for all insureds under policies of this type for a given class of insureds;

    (e) On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

    (f) On the basis of a single claim which is the result of water damage, if we can demonstrate that the insured has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

(4) If any of the reasons listed in Paragraphs O.2.b.(3)(a) – (f) apply, we will provide written notice at least 45 days before the date cancellation takes effect.

3. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within 15 days after the date cancellation takes effect.

**P. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least forty five (45) days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**Q. Renewal Notification**

If we elect to renew this policy, we will let you know in writing:

1. Of our decision to renew this policy; and

2. The amount of renewal premium payable to us.

This notice will be mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**R. No Benefit to Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding storing or moving property for a fee regardless of any other provision in this policy.

**S. Subrogation**

We may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Section III, B. Medical Payments to Others or to Section III, C. 2. Damage to Property of Others.

If the **residence premises** is a condominium, we will waive any rights of recovery against the condominium association that operates the community in which the **residence premises** is located.

**T. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable upon the earliest of the following:

1. 20 days after we receive your proof of loss and reach written agreement with you;

2. 60 days after we receive your proof of loss and:
    a. There is an entry of a final judgment; or

   b. There is a filing of an appraisal award or a mediation settlement with us; or

3. If payment is not denied, within 90 days after we receive notice of an initial, reopened or supplemental claim. However, this provision (**T**.3.) does not apply if factors beyond our control reasonably prevent such payment.

**U. Notification Regarding Access**

If we require access to an **insured** or claimant or to the insured property that is the subject of a claim, we must provide at least 48 hours' notice to you or the claimant, or your or the claimant's public adjuster or legal representative, before scheduling a meeting with you, the **insured** or the claimant or prior to conducting an onsite inspection of the insured property. You or the claimant may deny access to the property if the notice has not been provided or may waive the 48-hour notice.

**V. Abandonment of Property**

We need not accept any property abandoned by an **insured.**

PPHV-OTH-GEN-003 (11/2020)

# IN WITNESS

SAFETY SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
1832 Schuetz Rd
St. Louis, MO 63146-3540
PHONE: (314) 995-5300

It is hereby agreed and understood that the following Witness Clause supersedes all other Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Duane A Hercules
President

Nicholas A. Kriegel
Secretary

PPHV-END-GEN-002 (02/2016)

# Amended Special Limits of Liability for Contents

*This endorsement changes the policy. Please read it carefully.*

## Section II – PROPERTY COVERAGE

**B. Coverage and Loss Settlement; 7. Special Limits of Liability for Contents** is replaced by the following:

7. **Special Limits of Liability for Contents**

    These limits do not increase the amount of coverage for your **contents**. The special limit shown for each category below is the most we will pay for a covered loss to **contents** in that category.

    a. Money, bank notes, bullion, gold other than gold ware, silver other than silver ware, platinum - $500.
    b. **Watercraft**, including their trailers, furnishings, equipment and outboard engines or motors - $1,500.
    c. Trailers not used with **watercraft** -$1,500.
    d. Grave markers - $5,000.
    e. Securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, negotiable papers, passports, tickets - $1,500.
    f. Jewelry, watches, precious stones or semi precious stones, whether set or unset, that are lost, misplaced or stolen -$1,500.
    g. Furs that are lost, misplaced or stolen - $1,500.
    h. Guns that are lost, misplaced or stolen - $2,500.
    i. Silverware, goldware, pewterware or trophies that are lost, misplaced or stolen - $2,500.
    j. **Fine arts** - $2,500.
    k. **Collectibles** - $2,500.

This endorsement is issued as part of Policy HS200948605. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Policy Expiration Date, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

PPHV-END-FL-007 (02/2016)

# Dwelling Replacement Cost Coverage - Florida

*This endorsement changes the policy. Please read it carefully.*

It is agreed and understood that with respect to the following location:

3562 Estero Blvd
Fort Myers Beach, FL 33931

**Section II – PROPERTY**, **B**. **Coverage and Loss Settlement**, **1. Dwelling** is deleted and replaced with the following:

B.   **Coverage and Loss Settlement**

   1.   **Dwelling**

      For a covered loss we will pay the **reconstruction cost** for your **dwelling** up to the coverage limit shown for that location on your Declarations. However, we will pay no more than the **actual cash value** if actual repair or replacement is not complete. Once actual repair or replacement is complete, we will settle the loss on a. **reconstruction cost** basis as long as you provide us with proof within 180 days of the notice of loss pursuant to **Section IV – General Provisions**, **B. Your Duties After a Loss** that the repair or replacement is complete.

This endorsement is issued as part of Policy HS200948605. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Policy Expiration Date, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

PPHV-END-GEN-003 (02/2016)

# Elimination of Waiver of Deductible

*This endorsement changes the policy. Please read it carefully.*

All provisions and conditions of the policy apply unless they are altered by this endorsement.

It is agreed and understood that with respect to the following location:

3562 Estero Blvd
Fort Myers Beach, FL 33931

**Section II – PROPERTY COVERAGE**, **Deductible** is amended as follows:

The **Waiver of Deductible** provision is deleted and does not apply.

This endorsement is issued as part of Policy HS200948605. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Policy Expiration Date, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

PPHV-END-FL-011 (02/2016)

# Increased Limit for Ensuing Fungi or Bacteria Coverage - Florida

*This endorsement changes the policy. Please read it carefully.*

It is agreed and understood with respect to the following location:

3562 Estero Blvd
Fort Myers Beach, FL 33931

**Section II – PROPERTY COVERAGE**, C. **Additional Coverage**, 6. **Ensuing Fungi or Bacteria** is deleted and replaced with the following:

6. **Ensuing Fungi or Bacteria**

For a covered loss we will not pay more than $50,000 for all increased costs that are **fungi** or bacteria remediation expenses described below. This **fungi** or bacteria remediation expense limit does not increase your coverage amount.

**Fungi** or bacteria remediation means the reasonable and necessary costs for:

a. Testing and monitoring the air or property to confirm the absence, presence or level of **fungi** or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be paid only to the extent that there is a reason to believe that there is the presence of **fungi** or bacteria;

b. Developing a **fungi** or bacteria remediation plan and implementing that **fungi** or bacteria remediation plan including the clean up, removal, containment, treatment, or disposal of **fungi** or bacteria;

c. Tearing out and replacing any part of the building or other covered property as needed to gain access to the **fungi** or bacteria beyond that which is required to gain access to covered property physically damaged by a covered loss;

d. Removing debris of covered property containing **fungi** or bacteria beyond that which is required to remove debris of the covered property physically damaged by a covered loss; and

e. Repairing or replacing covered property containing **fungi** or bacteria beyond that which is required to repair or replace the covered property physically damaged by a covered loss.

**Fungi** or bacteria remediation expenses also includes coverage for loss of use of your **residence premises** resulting from **fungi** or bacteria.

Loss of use means:

a. The necessary reasonable increase in living expenses incurred by you so that your household can maintain its normal standard of living while your **residence premises** is uninhabitable; and

b. For a **residence premises** that is rented out, the amount of rent shown

eFiled Lee County Clerk of Courts Page 49

PPHV-END-FL-011 (02/2016)

on a signed lease agreement, less any expenses that do not continue, while the **residence premises** is uninhabitable.

$50,000 is the most we will pay regardless of the number of locations insured, or the number of claims. We will not make any additional payments for ensuing **fungi** or bacteria under any other part of this policy.

This endorsement is issued as part of Policy HS200948605. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Policy Expiration Date, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

PPHV-END-FL-011 (02/2016)          Includes copyrighted material of ISO, Inc., with its permission.          Page 2 of 2

eFiled Lee County Clerk of Courts Page 50

PPHV-END-GEN-006 (02/2016)

# Loss of Use – Fair Rental Value

*This endorsement changes the policy. Please read it carefully.*

It is agreed and understood that with respect to the following location:

3562 Estero Blvd
Fort Myers Beach, FL 33931

**SECTION II – PROPERTY COVERAGE**, **B**. **Coverage and Loss Settlement**, **8. Loss of Use** is revised by adding the following:

    **8.  Loss of Use:**

        c.  Fair Rental Value
        The amount of rent shown on a signed lease agreement less any expenses that do not continue while the **residence premises** is not fit to live in.

        Payment will be for the shortest time required to repair or replace the damage, or if you permanently relocate, the shortest time required for your household to settle elsewhere.

This endorsement is issued as part of Policy HS200948605. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Policy Expiration Date, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

PPHV-END-GEN-017 (02/2016)

# Premises Liability Limitation

*This endorsement changes the policy. Please read it carefully.*

It is agreed and understood **SECTION III – LIABILITY COVERAGE**, **A. Personal Liability** is deleted and replaced with the following:

    **A. Personal Liability**

        If a claim is made or a suit is brought against an **insured** for **damages** because of **personal injury** or **property damage** caused by an **occurrence** at the **residence premises** shown on your Declarations to which this coverage applies, we will:

        1. Pay up to the liability coverage limit shown on your Declarations for **damages** for which an **insured** is legally liable. We will not pay more than the liability coverage limit shown on your Declarations for any single **occurrence** regardless of the number of **insureds**, claims made or persons injured. **Damages** include prejudgment interest awarded against an **insured**; and

        2. Provide a defense at our expense even if the suit is groundless, false or fraudulent. You may chose counsel from a panel of firms that we have selected. If a panel has not been selected in the jurisdiction that the suit is brought or the claim is made then we reserve the right to assign counsel. We may investigate and settle any claim or suit at our discretion. Our duty to settle or defend ends when our liability coverage limit for the occurrence has been exhausted by payment of a judgment or settlement. Costs of providing a defense, other than settlement payments, are in addition to the liability coverage limit.

This endorsement is issued as part of Policy HS200948605. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Policy Expiration Date, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

PPHV-END-FL-001 (02/2016)

# Sinkhole Loss Coverage - Florida

*This endorsement changes the policy. Please read it carefully.*

**Please note, no coverage is provided under this Endorsement for your other structures.**

It is agreed and understood with respect to the following location:
3562 Estero Blvd
Fort Myers Beach, FL 33931

The following applies.

In consideration of the additional premium charged, **Section I - DEFINITIONS** is amended to include the following definitions:

**Neutral evaluation**

    **Neutral evaluation** means the alternative dispute resolution provided in Florida Statute section 627.7074.

**Neutral evaluator**

    **Neutral evaluator** means a **professional engineer** or **professional geologist** who has completed a course of study in alternative dispute resolution designed or approved by the Florida Department of Financial Services ("the Department") for use in the **neutral evaluation** process and who is determined by the Department to be fair and impartial.

**Professional Engineer**

    **Professional engineer** means a person, as defined in Florida Statute section. 471.005, who has a bachelor's degree or higher in engineering. A professional engineer must also have experience and expertise in the identification of sinkhole activity as well as other potential causes of structural damage.

**Professional geologist**

    **Professional geologist** means a person, as defined in Florida Statute section 492.102, who has a bachelor's degree or higher in geology or related earth science and experience and expertise in the identification of sinkhole activity as well as other potential geologic causes of structural damage.

**Rebate**

    **Rebate** means a remuneration, payment, gift, discount, or transfer of any item of value to the policyholder by or on behalf of a person performing the repairs for **sinkhole loss** as an incentive or inducement to obtain repairs performed by that person.

**Sinkhole Activity**

    **Sinkhole Activity** means settlement or systematic weakening of the earth supporting the covered building. The settlement or systematic weakening must result from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on limestone or similar rock formations.

PPHV-END-FL-001 (02/2016)

**Sinkhole Loss**

    **Sinkhole Loss** means **structural damage** to the **principal building** or foundation of the **principal building** caused by **sinkhole activity**.

**Section II – PROPERTY COVERAGE, C. Additional Coverages** is amended to include the following:

    **Sinkhole Loss**
    We insure for:

1. Direct physical loss to the **principal building** covered under **Section II** caused by **sinkhole activity** resulting in a **sinkhole loss**, including the costs incurred to:
   a. Stabilize the land and the **principal building**; and
   b. Repair the foundation;

   in accordance with the recommendations of the **professional engineer** who verifies the presence of a **sinkhole loss** in compliance with Florida sinkhole testing standards and with notice to you; and

2. Direct physical loss caused by **sinkhole activity** to **contents**, but only if there is **structural damage** to the **principal building**.

   However, the additional living expenses provided in **Section II – PROPERTY COVERAGE, B. Coverage and Loss Settlement, 8. Loss of Use** apply only if there is **structural damage** to the **principal building** caused by **sinkhole activity**.

With respect to a loss to the **principal building** caused by **sinkhole activity**, the following is added to **Section II – PROPERTY COVERAGE, B. Coverage and Loss Settlement, 1. Dwelling** :

**Dwelling**

1. For a covered **sinkhole loss**, we will pay as follows:

   a. We will pay no more than the actual cash value of the **sinkhole loss**, which does not include underpinning or grouting or any other repair technique performed below the existing foundation of the **principal building**, until you enter into a contract for the performance of building stabilization or foundation repairs, in accordance with the recommendations of the **professional engineer's** report issued pursuant to Florida Statute section 627.7073 and within 90 days after we notify you with confirmation of coverage for the **sinkhole loss**. If either you or we invoke the **neutral evaluation** process, the 90-day period begins again 10 days after the **neutral evaluation** process concludes. Once you enter into such contract for the performance of building stabilization and foundation repairs, we will settle the loss as described in **Section II – PROPERTY COVERAGE, B. Coverage and Loss Settlement** and pay the amount necessary to begin and perform such repairs as work is performed and as expenses are incurred. The stabilization and all other repairs to the **principal building** must be completed within 12 months after entering into such contract for repairs, unless:

   (1) There is a mutual agreement between you and us;
   (2) The claim is:
      (a) Involved in neutral evaluation;

(b) In litigation;

(c) Under mediation; or

(d) Under Appraisal.

b. If coverage for **sinkhole loss** is available and we deny your claim for **sinkhole loss** without performing testing under Florida Statute section 627.7072, you may demand testing under Florida Statute section 627.7072 by writing to us within 60 days after you receive our denial of the claim. You must pay 50 percent of the actual costs of the analyses and services provided under Florida Statute sections 627.7072 and 627.7073 or $2,500.00, whichever is less.

However, if the **professional engineer** or geologist selected or approved by us provides written certification of a **sinkhole loss**, we will reimburse you for the costs.

c. If we:

(1) Receive written certification that there is no **sinkhole loss** or that the cause of damage was not **sinkhole activity** and determine that you submitted a claim for **sinkhole loss** without good faith grounds; and

(2) You requested the testing, analysis and services we provided as specified under Florida law after we informed you in writing of your potential liability for reimbursement and gave you the opportunity to withdraw the claim, you must reimburse us for 50 percent of the actual costs of the analyses and services provided under Florida Statute sections 627.7072 and 627.7073 or $2,500.00, whichever is less.

d. If the **professional engineer** selected or approved by us verifies a **sinkhole loss** but, before repairs have begun or expenses have been incurred, determines that the recommended repairs cannot be completed within the policy limits, we must either:

(1) Complete the recommended repairs; or

(2) Pay the policy limits.

e. If the repairs have begun and the **professional engineer** selected or approved by us determines that the recommended repairs cannot be completed within the policy limits, we may at our option, either:

(1) Complete the recommended repairs; or

(2) Pay the policy limits without a reduction for the repair expenses incurred.

2. As a precondition to accepting payment for a **sinkhole loss**, you must, at your own expense, file with the county clerk of the court a copy of any sinkhole report regarding the insured property that was:

a. As a precondition to accepting payment for a **sinkhole loss**, you must, at your own expense, file with the county clerk of the court a copy of any sinkhole report regarding the insured property that was:

b. Requested by you.

3. You may not accept a **rebate** from any person performing repairs for **sinkhole loss** covered under this Endorsement. If you receive a **rebate**, no coverage is provided under this Endorsement**,** and you

PPHV-END-FL-001 (02/2016)

must refund the amount of the **rebate** to us.

With respect to coverage provided by this Endorsement, **Section II - PROPERTY COVERAGE**, **D. Exclusions** is amended as follows:

The Earth Movement Exclusion does not apply.

With respect to coverage provided by this Endorsement, **Section IV – GENERAL PROVISIONS, B. Your Duties After a Loss**, Paragraph 1. is replaced by the following:

1. Give prompt notice to us or our agent, except that notice of any initial, supplemental or reopened claim for **sinkhole loss** must be provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the **sinkhole loss**. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same **sinkhole loss** which we have previously adjusted pursuant to the initial claim.) Any initial, supplemental or reopened claim for **sinkhole loss** is barred if notice of the claim in accordance with this Paragraph is not provided.

With respect to coverage provided by this Endorsement, **Section IV – GENERAL PROVISIONS, K. Suit Against Us** is replaced by the following:

**K.  Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms of this policy and the action is started within five years after the date of loss, except that the time for filing suit is extended for a period of 60 days following

the conclusion of the **neutral evaluation** process or five years after the date of loss, whichever is later.

With respect to coverage provided by this Endorsement**, Section IV – GENERAL PROVISIONS, L. Mediation or Appraisal** is deleted and replaced with the following:

**L.  Neutral Evaluation**

Provided that you have complied with the duties after loss requirements contained in Paragraph **B.1.,** and following receipt by us of a report from a **professional engineer** or **professional geologist** on the cause of loss and recommendations for stabilizing the land and building and foundation repairs, or if we deny your claim, either party may file a request with the Florida Department of Financial Services ("the Department"), for **neutral evaluation** in accordance with the rules established by the Department. **Neutral evaluation** supersedes the alternative dispute resolution process under Florida Statute section 627.7015 but does not invalidate the appraisal clause of the insurance policy. In this event, you and we shall mutually select a **neutral evaluator** from a list maintained by the Department. If you and we fail to agree on a **neutral evaluator** within 14 business days, the Department shall appoint a **neutral evaluator**. The **neutral evaluator** shall make reasonable efforts to hold the **neutral evaluation** conference within 90 days after receipt of the request by the Department. The **neutral evaluator** must be allowed reasonable access to the interior and exterior of the property being evaluated. Before the evaluator's physical inspection of the property, he or she must be provided with any reports initiated by you or your agent confirming a **sinkhole loss** or disputing another sinkhole report. The recommendation of the **neutral evaluator** will not be binding on you or us.

We will pay the reasonable costs associated with the neutral evaluation.

PPHV-END-FL-001 (02/2016)

This endorsement is issued as part of Policy HS200948605. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Policy Expiration Date, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

PPHV-END-FL-001 (02/2016)          Includes copyrighted material of ISO, Inc., with its permission.          Page 5 of 5

eFiled Lee County Clerk of Courts Page 57

PPHV-END-GEN-028 (02/2016)

# Tenant Animal Liability Exclusion

*This endorsement changes the policy. Please read it carefully.*

## SECTION III – LIABILITY COVERAGE

**D. Exclusions**, the following Exclusion is added:

**Animals**
**Personal injury** or **property damage** arising out of direct physical contact with any animal that is owned by or in the care, custody or control of someone renting any part of the **residence premises**.

This endorsement is issued as part of Policy HS200948605. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Policy Expiration Date, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

PPHV-END-GEN-028 (02/2016)          Includes copyrighted material of ISO, Inc., with its permission.          Page 1 of 1

eFiled Lee County Clerk of Courts Page 58

PPHV-END-GEN-069 (05/2020)

# Communicable Disease Exclusion

*This endorsement changes the policy. Please read it carefully.*

## SECTION II – PROPERTY COVERAGE

**D.  Exclusions** is revised by adding the following:

### Communicable Disease

This insurance does not cover any loss or damage to property, cost or expense due to any loss of use of property or any other cost or expense based upon, arising out of, resulting from, in any way involving, related to (whether directly or indirectly), or in any way associated with any actual, alleged, threatened, perceived, or suspected direct or indirect transmission of, contact with, exposure to, or impact from any communicable disease, including but not limited to any actual, alleged, or perceived fear or threat of any such transmission, contact, exposure, or impact.

## SECTION III – LIABILITY COVERAGE

**D.  Exclusions, 10. Communicable Disease** is deleted and replaced by the following:

### 10. Communicable Disease

This insurance does not cover any claim or suit for **damages**, defense costs or any other cost or expense based upon, arising out of, resulting from, in any way involving, related to (whether directly or indirectly), or in any way associated with any actual, alleged, threatened, perceived, or suspected direct or indirect transmission of, contact with, exposure to, or impact from any communicable disease, including but not limited to any actual, alleged, or perceived fear or threat of any such transmission, contact, exposure, or impact.

This Exclusion applies even if the claim or suit against any **insured** allege negligence or other wrongdoing in the:

a.  Supervision, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

b.  Testing for a communicable disease;

c.  Failure to prevent the spread of the disease; or

d.  Failure to report the disease to authorities.

This endorsement is issued as part of Policy HS200948605. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Policy Expiration Date, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.



April 18, 2023


Carlos L. Santi, Esq.
2307 Douglas Road, Suite 302
Miami, FL 33145

Ruth C. Baltzer
32 Tobey Brook
Pittsford, NY 14534


RE:  Claim Number:            FL-025-753
     Policy Number:           HS200948605
     Underwriting Company:    Safety Specialty Insurance Company
     Date of Loss:            9/28/2022
     Cause of Loss:           Hurricane Ian
     Loss Location:           3562 Estero Boulevard, Fort Myers Beach, FL 33931

Dear Mr. Santi:

This letter sets forth the coverage determination of Safety Specialty Insurance Company ("Safety Specialty") with respect to Ruth Baltzer's claim for water damage to her property located at 3562 Estero Boulevard, Fort Myers Beach, Florida 33931 ("Property"). As a result of this occurrence, coverage has been requested under policy number HS200948605, which was issued by Safety Specialty for the policy period effective November 1, 2021 to November 1, 2022 ("the Policy"). As you are aware, Safety Specialty engaged the expert services of a Florida licensed professional engineer firm, Grindley Williams Engineering, Inc. ("GWE") to inspect and evaluate the causation of the reported damages. GWE inspected the Property on October 19, 2022. Per the attached report, GWE provide the following summary of findings:

**CONCLUSIONS**

Based on the conditions observed and the information made available to GWE, the following statements present our professional opinion within a reasonable scientific probability:

- While winds sufficient to damage the components and cladding of the buildings were present, the storm surge and associated wave action were much more significant and ultimately led to the failure/destruction of the buildings. GWE was unable to determine the extent of damage due to wind given the total destruction of the buildings.
- Based on the timeline of the wind speed and surge provided by WG, damage from wind and surge occurred concurrently until the building was overcome by wave



action.

At this point in time we refer you to the following excerpts from your High Value Home Policy, form PPHV-PCF-FL-001 (02/2016), which states in part:

### Section I - DEFINITIONS

**Flood**

**Flood means:**
    a.  A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties from:
        1.  Overflow of inland or tidal waters;
        2.  Unusual and rapid accumulation or runoff of surface waters from any source;
        3.  **Mudflow**; or

    b.  Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a **flood** as defined in a. above.

All flooding in a continuous or protracted event will constitute a single **flood**.

<p align="center">***</p>

### Section II – PROPERTY COVERAGE

**A.  Perils Insured Against**:
We insure against all risks of sudden and accidental direct physical loss or damage to your **dwelling, contents** and **other structures** unless an exclusion applies.

<p align="center">***</p>

**D.  Exclusions**

The following exclusions apply to **Section II – PROPERTY COVERAGE**.

<p align="center">***</p>

**20. Flood or Surface Water**
We do not cover any loss caused directly or indirectly by

2

**flood** or surface water. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. **Flood** or surface water means:

a.  **Flood**;
b.  Surface water, water accumulated outside of a building or structure, including but not limited to standing or ponding water, waves, including tidal wave and tsunami, tides, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; including storm surge;
c.  Run-off of water from any surface; or

d.  Water-borne material carried or otherwise moved by any of the water referred to in **20.**a to **20.**c of this Exclusion.

However, we do insure ensuing covered loss unless another exclusion applies

21. **Ground Water**
We do not cover any loss caused directly or indirectly by ground water. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. Ground water means:
a.  water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a floor, wall, building, sidewalk, driveway, patio, foundation, swimming pool or structure; or
b.  waterborne material carried or otherwise moved by any of the water referred to in **21.**a of this Exclusion.

However, we do insure ensuing covered loss unless another exclusion applies.

This Exclusion does not apply to the extent coverage is provided in **C. Additional Coverages**, **2. Back Up of Sewers and Drains**.

\*\*\*

**Section IV– GENERAL PROVISIONS**

\*\*\*

B.  **Your Duties After a Loss**
In case of a loss for which coverage may be provided under this Policy, we have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to

3

us. These duties must be performed either by you, an **insured** seeking coverage, or a representative of either:

1.  Give prompt notice to us or your insurance agent.
    Except for Precautionary Repairs taken under Additional Coverage **C.16** of **Section II**, there is no coverage for repairs that begin before the earlier of:
    a.  72 hours after we are notified of the loss;
    b.  The time of loss inspection by us; or
    c.  The time of other approval by us;

2.  To the degree reasonably possible, retain the damaged property; and allow us to inspect, subject to this paragraph 2, all damaged property prior to its removal from the **residence premises**;

3.  A claim, supplemental claim or reopened claim for loss or damage caused by **hurricane** or other windstorm must be given to us in accordance with the terms of this policy within three years after the **hurricane** first made landfall or a windstorm other than **hurricane** caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.) Any initial, supplemental or reopened claim for loss or damage caused by **hurricane** or other windstorm is barred if notice of the claim in accordance with this Paragraph is not provided.

    This provision concerning time for submission of a claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this policy under the Suit Against Us Provision including any amendment to that condition.

    \*\*\*

6.  Protect the property from further damage. The following must be done:
    a.  Take reasonable emergency measures that are necessary to protect the covered property from further damage, as provided under Additional Coverage **C.16** of **Section II**. A reasonable emergency measure under 6.a. above may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect; and

4

    b.  Keep an accurate record of repair expenses;

7.  Cooperate with us in the investigation of a claim, settlement or the defense of any claim or suit.

8.  Prepare an inventory of damaged property. Show the quantity, description and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

9.  As often as we reasonably require:
    a.  Show the damaged property;
    b.  Provide us with records and documents we request and permit us to make copies; and
    c.  Submit to separate examination under oath.

10.  Send to us, within 60 days of our request, your signed, sworn proof of loss. The proof of loss must set forth, to the best of your knowledge and belief:
    a. The time and cause of loss;
    b. The interest of all insureds and all others in the property involved and all liens on the property;
    c. Other insurance which may cover the loss;
    d. Changes in title or occupancy of the property during the term of the policy;
    e. Specifications of damaged buildings and detailed repair estimates;
    f. The inventory of damaged contents described in 8. above;
    g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and
    h. Evidence or affidavit that supports a claim under Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

11.  Provide us with the names and addresses of any claimants and witnesses;

<div align="center">***</div>

On March 31, 2023, we issued correspondence wherein Safety Specialty followed up on its numerous prior requests for an inventory of damaged and undamaged property dated: (1) December 22, 2022; (2) March 7, 2023; (3) March 8, 2023; (4) March 14, 2023; and, (5) March 15, 2023. Safety Specialty specifically requested an inventory of the damaged and undamaged property since the date of loss in accordance with the Policy terms to be provided within 5 calendar days, or by April 5, 2023. That date has since lapsed and none of the requested documents were

5

provided. The Insured's failure to comply with the aforementioned requests and Policy provisions has materially prejudiced Safety Specialty's ability to investigate and adjust this Claim. Further, we direct your attention to High Value Home Policy, form PPHV-PCF-FL-001 (02/2016), which states in part:

### Section IV – GENERAL PROVISIONS

***

### L.  Mediation or Appraisal

If you and we fail to agree if coverage exists under this policy for a loss; or on the amount of loss, either may demand a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. If we fail to agree on the amount of loss, the loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and, you have not rescinded the settlement within 3 business days of reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provide to you.

We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That Conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

If you and we fail to agree on the amount of loss, either may request an appraisal of the loss. The request must be mutually agreed between you and we. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

Each party will:
a.   Pay its own appraise; and

6

    b.  Bear the other expenses of the appraiser and umpire equally.

<div align="center">***</div>

For the reasons detailed above, it is the position of Safety Specialty that there is no coverage under the Policy for water damages from flood. Your policy expressly excludes damages caused by flood, surface water, or ground water. As such, we are unable to make any payment to you for this loss.

Our position set out above is based upon the information we have to date. If you have any additional information, which you feel might affect our coverage determination, please call or forward it to me as soon as possible for our consideration.

Safety Specialty reserves all of its rights under the Policy and further reserves the right to rely upon additional terms, conditions, and exclusions not expressly referred to herein. Neither this letter, nor Safety Specialty's actions in investigating this claim, are meant nor should be construed by you as a waiver or modification of any of the terms or conditions of the Policy. Your rights are also reserved under the policy.

As always, I am here to assist you with any claim related questions you may have. If you have any questions or concerns regarding this claim or this letter, please do not hesitate to contact me.

Kindest Regards,


Bob Kester
General Adjuster
Phone: 631-282-8528
Email: RKester@pureinsurance.com
FL License: A140210

CC:    Marsh and McLennan Agency LLC Company


Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

7



GRINDLEY
WILLIAMS
ENGINEERING

4175 South Pipkin Road
Suite 210
Lakeland, FL 33811
(863) 676-2600

grindleywilliams.com

December 5, 2022

Michael Fischer, Supervising Adjuster
Pure Insurance
PO Box 480
Elmsford, NY 10523

**RE:** **Forensic Engineering Exploration**
**Ruth Baltzer; 3562 Estero Boulevard, Fort Myers Beach, Florida 33931**
**Claim No. FL-025-753; GWE Project No. 22-26536**

Dear Mr. Fischer:

This letter presents the results of a forensic engineering exploration by Grindley Williams Engineering (GWE) at the above-referenced address. In conjunction with this exploration, a site visit was completed by Daniel Sanders, PE, and Steven Grindley, CBC, HI, on October 19, 2022.

**1.0**   **Purpose**

GWE was tasked by the insurer to inspect the subject location in conjunction with a property damage claim. The date of loss (DOL) for the claim was indicated to be September 28, 2022. The cause of the reported damage was indicated to be Hurricane Ian.

The goal of this exploration was to provide our professional opinion as to the reasonable cause of loss due to storm surge and wind, or a combination thereof.

**2.0**   **Site Description and Background**

The subject property consisted of two separate buildings that faced northeast ((**Photograph 1**):

- ▶ The north building was a one-story, elevated wood frame building with an elevated wood floor system supported by wood piers and with a shingle roof covering. According to the county property appraiser website, the building was originally constructed in 1950 and the insured acquired the property in 1997.

- ▶ The south building was a one-story, wood frame building with an elevated wood floor system supported by wood piers and with a shingle roof covering. According to the county property appraiser website, the building was originally constructed in 1921 and the insured acquired the property in 1997.

At the time of GWE's site visit, only debris and wood piles remained (**Photograph 5**).

**2.1**   **Weather History**

*WeatherGuidance* (WG) conducted a review of weather data from September 21, 2022, to October 5, 2022 (**Attachment**). A summary of representative conditions occurring at the insured location during Hurricane Ian is included below.

- ▶ Winds of approximately 40 mph began at around 6 a.m. on September 28, 2022, with peak gusts of 90 mph occurring at approximately 3 p.m. on September 28, 2022. Wind speeds slowly decreased after the period of peak gusts, with speeds dropping below 40 mph at 9 a.m. on September 29, 2022.

- ▶ Storm surge began around 6 a.m. on September 28, 2022, with a peak surge of 12 feet at 6 p.m. on September 28, 2022. Storm surge slowly decreased after the period of peak surge, dropping below 2 feet at midnight between September 29 and 30, 2022.

According to the United States Geological Survey (USGS) Flood Event Viewer, a high water mark was documented on a building situated approximately 0.14 mile northeast of the subject property. The site of the high water mark was designated as FLLEE32992, and the elevation of the waterline was measured at 9.5 feet above the ground, or 13.8 feet above mean sea level as established by the 1988 North American Vertical Datum (NAVD88). Based on this information and the elevation indicated by Eagleview, the storm surge reached approximately 8 feet above ground level at the subject location. Screen captures of the USGS high water mark location and information are included in the **Site Photographs**.

**3.0**   **Interview**

An interview with the insured's daughter, Laura, was conducted during the site visit. The following was reported at that time:

- ▶ There were two buildings on the property. Both have been destroyed,

- ▶ The buildings were rental cottages. One was constructed around 1921, the other was around 1949.

- ▶ They haven't accessed the property firsthand at this point, but their neighbor provided photographs a couple of days after the storm.

- ▶ There have been no changes to property since the storm that she is aware of.

**4.0**   **Document Review**

GWE was provided with a *Risk Management Report* for a site visit on January 20, 2017, containing photographs taken during the site visit, that was prepared by Pure 360 to review in conjunction with this exploration. A screen capture of a comparative photograph is included and discussed in the attached **Site Photographs**.

**5.0**   **Observations**

Our observations are presented in the attached **Site Photographs**. Full-resolution images are retained electronically and can be provided upon request. Historical aerial photographs were also reviewed. Screen captures of aerial photographs are included and discussed in the **Site Photographs**.

**6.0      Effects of Storm Surge**

Storm surge affects a structure in several ways, the most violent of which is wave action acting on structures nearby the coast. Wave action occurs as the surge is moving onto land, typically at the transition between dunes and other coastal topography and level ground farther inland. Other damage from surge can be related to the weight of the sea water acting on walls, buoyant forces lifting slabs and elevated structures and scour along piles and slabs as the surge is moving onto land or receding.

Considering the proximity to the coast, the elevation of the property, and the surge data discussed above, this property was significantly impacted by storm surge-related wave action, ultimately causing the total destruction of both buildings.

**7.0      Effects of Wind**

Given the age/construction of the buildings and the proximity to the coast, damage to the components and cladding would be expected; however, given that the buildings were no longer in place; GWE was unable to investigate the extent of damage caused by wind.

**8.0      Conclusions**

Based on the conditions observed and the information made available to GWE, the following statements present our professional opinion within a reasonable scientific probability:

- ▶ While winds sufficient to damage the components and cladding of the buildings were present, the storm surge and associated wave action were much more significant and ultimately led to the failure/destruction of the buildings. GWE was unable to determine the extent of damage due to wind given the total destruction of the buildings.
- ▶ Based on the timeline of the wind speed and surge provided by WG, damage from wind and surge occurred concurrently until the building was overcome by wave action.

**9.0      Limitations**

The opinions provided in this report are based on visual, representative observations and information made available to GWE. Analyses and/or tests that were performed were of a sufficient scope to provide an opinion within a reasonable professional probability. Should additional information be uncovered or made available, GWE retains the right to revise or supplement this document.

This document was prepared for the exclusive use of the insurer, the policyholder, and/or their representatives. No unauthorized reuse or reproduction of this report, in part or whole, shall be permitted without prior written consent.

**10.0     Closure and Certification**

Thank you for giving us the opportunity to assist in this matter. If you have any further questions, comments, or concerns, please contact us.

Ruth Baltzer | Claim No. FL-025-753                                    GWE Project No. 22-26536

Sincerely,
**Grindley Williams Engineering**
Florida Registration No. 31483

12/5/2022

This item has been digitally signed and sealed by Daniel R. Sanders, PE, on the date adjacent to the seal.

Printed copies of this document are not considered signed and sealed and the signature must be verified on any electronic copies.

Daniel R. Sanders, PE
Senior Professional Engineer
Florida License No. 84708

DRS:ncc/esg

Enclosures:     Site Photographs
                Attachment – WeatherGuidance Report

SITE PHOTOGRAPHS

Ruth Baltzer | Claim No. FL-025-753                              GWE Project No. 22-26536



**Photograph 1**      Front Elevation

Google Street View photograph dated July 2022; 2 buildings indicated by arrows; buildings faced northeast



**Photograph 2**      Back Elevation

PURE 360 photograph dated January 20, 2017; north building

Grindley Williams Engineering                              Site Photographs | Page 1 of 9

Ruth Baltzer | Claim No. FL-025-753

GWE Project No. 22-26536



**Photograph 3**    Back Elevation

EagleView photograph dated January 14, 2022; north building and south building



**Photograph 4**    Right Elevation

EagleView photograph dated January 8, 2022; north building and south building

*Grindley Williams Engineering*

Site Photographs | Page 2 of 9

Ruth Baltzer | Claim No. FL-025-753

GWE Project No. 22-26536



**Photograph 5**      Overview

Both buildings no longer present



**Photograph 6**      Overview

View toward street

Grindley Williams Engineering

Site Photographs | Page 3 of 9



**Photograph 7**      Overview

View toward beach



**Photograph 8**      North Building

Foundation piers leaning

Ruth Baltzer | Claim No. FL-025-753                                      GWE Project No. 22-26536



**Photograph 9**        North Building

Close-up of previous photograph



**Photograph 10**        North Building

Alternate view of previous photograph; scour/erosions adjacent to piers



**Photograph 11**     South Building

Foundation piers



**Photograph 12**     South Building

Alternate view of previous photograph

Ruth Baltzer | Claim No. FL-025-753                                    GWE Project No. 22-26536



**Photograph 13**     South Building

Building remnants



**Photograph 14**     Historical Aerial Photograph

Nearmap photograph dated May 10, 2022; prior to DOL and most recent aerial photograph available of sufficient resolution

Ruth Baltzer | Claim No. FL-025-753                                        GWE Project No. 22-26536



**Photograph 15**     USGS High Water Mark Location

High water mark (seed line) measured at approximately 9.8 feet above ground (13.8 feet above NAVD88)



**Photograph 16**     USGS High Water Mark Location

Subject building is located approximately 0.14 mile from USGS high water mark measurement

Grindley Williams Engineering                                        Site Photographs | Page 8 of 9

Ruth Baltzer | Claim No. FL-025-753

GWE Project No. 22-26536



**Photograph 17**     Historical Photograph

Eagleview Aerial Photograph; subject building is approximately 5.8 ft above datum

*Grindley Williams Engineering*

Site Photographs | Page 9 of 9

ATTACHMENT



Claim/Reference #:              22-26536

Insured/Carrier Name:          N/A

Claimed Date of Loss:          09/28/2022

Search Period:                 09/21/2022 - 10/05/2022

Insured Location:              3562 Estero Boulevard, Fort Myers Beach, FL, 33931

Latitude: 26.4427981          Longitude: -81.9315931          County/Parish: LEE

**We have reviewed radar data, ground reports and other data for the stated period and location. As a result, we have identified the following conditions at that location:**

•The attached graph shows estimated wind and storm surge inundation information that we believe is representative of the conditions that occurred at the insured location during the period in question, in association with Hurricane Ian.

**I hereby attest that the above information is true and correct to the best of my knowledge and professional opinion as indicated by my signature below on this 13th day of October, 2022.**

**Robert C. White • President/Sr. Forensic Weather Analyst • www.weatherguidance.com • (512) 504-3151 x5**

**Image 1**
**Estimated Peak Wind & Storm Surge Inundation**
**at subject location (all times local)**
**Hurricane Ian 9/28/22-9/29/22**

Peak Wind (mph)
100
90
80
70
60
50
40
30
20
10
0
9/28/22
6am
9am
12 Noon
3pm
6pm
9pm
Midnight 9/29/22
3am
6am
9am
12 Noon
3pm
6pm
9pm
Midnight
Storm Surge (ft)
14
12
10
8
6
4
2
0
6am
9am
12 Noon
3pm
6pm
9pm
Midnight
3am
6am
9am
12 Noon
3pm
6pm
9pm
Midnight